**FILED**

2004 JUL -8 P 4: 24

U.S. DISTRICT COURT
BRIDGEPORT, CONN

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT SALATTO, PLAINTIFF | |
| | |
| VS. | CASE NO: 3:00CV378 (SRU) |
| | |
| LEO BOMBALICKI DEFENDANT | JULY 2, 2004 |

## MOTION FOR COURT TO ENFORCE SETTLEMENT

The Plaintiff, Robert Salotto, hereby motions for the court to enforce the settlement made between the Defendant and the Plaintiff on March 11, 2004, in the amount of $3,000.00. The Defendant has not paid this settlement and the proper release has been immediately signed. The Plaintiff asks for the enforcement of the settlement as well as interest of 12% from the date of settlement and for the Defendant to pay $500.00 legal fees to enforce this settlement.

THE PLAINTIFF

By_____

Michael P. Farrell, Esquire
201 Center Street
West Haven, CT  06516
(203) 934-863
Fed. Bar No. 00169



*FILED*

Mar 14   3 00 PM '02

U.S. DISTRICT COURT
NEW HAVEN. CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIVIAN GREENE,<br>Plaintiff | : CIVIL ACTION NO._____ |
| | : |
| | : |
| | : |
| VS. | : |
| | : |
| OFFICER YOUNG (BADGE 992)<br>and OFFICER JANE DOE<br>Defendants. | : |
| | : |
| | :MARCH 15, 2002 |

## C O M P L A I N T

1.      This is an action for money damages to redress the deprivation by the

defendants of rights secured to the plaintiff by the Constitution and laws of the United

States and the State of Connecticut.  In the evening hours of August 3, 2001, the plaintiff

was patronizing a restaurant when she was brutally assaulted by a group of New Haven

police officers and thereafter subject to a humiliating and unlawful search of her person.

2.      Jurisdiction of this Court is invoked under the provisions of §§1331,

1343(3) and 1367(a) of Title 28 and §§1983 and 1988 of Title 42 of the United States

Code, and under the pendent jurisdiction of this court with respect to the causes of action

arising under state law.

3.      During all times mentioned in this Complaint, the plaintiff was, and she

still is, an adult citizen of the United States residing in New Haven, Connecticut.

4.    During all times mentioned in this Complaint, the defendants were duly appointed officers in the Police Department of New Haven, Connecticut, acting in their official capacities.  They are sued, however, in their individual capacities.

5.    During all times mentioned in this Complaint, the defendants were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Connecticut and the City of New Haven.

6.    At all times mentioned in this Complaint, the defendants acted jointly and in concert with each other.  Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendants, but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

7.    Officer Jane Doe is named in a pseudonym because, despite diligent efforts, her identity remains unknown at the present time.

8.    On the evening of August 3, 2001, the plaintiff was upon premises know as the "Tee Off at Nine Café" located on Grand Avenue in the City of New Haven.

9.    The defendant police officers entered the location where plaintiff was and ordered her outside.  Defendant Young forcefully grabbed plaintiff by her arm, wrenched it behind her back, and turned her wrist upward in a sadistic pain compliance technique.

2

While holding plaintiff in this manner, defendant Young then forcefully removed her from her seat and forced her outside to other waiting police officers.

10.     Without any justification whatsoever, plaintiff was accused of being a drug dealer and was forced to submit to a full body search in the presence of numerous police officers and members of the public who have congregated in the area because of the police involvement.

11.     While standing in the parking lot outside the Tee Off at Nine Café, Defendant Jane Doe looked down plaintiff's pants, and forcefully removed plaintiff's shirt and undergarments exposing her breasts in the presence of numerous other police officers and members of the public.

12.     After an extensive and humiliating search, the aforementioned defendant police officers released plaintiff and did not charge her with any crime.

13.     As a direct and proximate result of the acts and omissions of the defendants herein described, the plaintiff suffered extensive and serious medical injuries, including swelling and pain to her hand and shoulder, headaches, sleeplessness, loss of appetite, and general debility; some or all of these injuries may be permanent in nature.

14.     As a further direct and proximate result of the acts and omissions of the defendants herein described, the plaintiff has undergone medical testing and treatment, all to her economic loss; she has also suffered great physical and emotional pain, fear, and

3

anguish, all to her economic loss; she has lost the ability to enjoy life in the manner customary for her; and in addition she has suffered the loss of all the constitutional rights described herein.

15.    In the manner described herein, the defendants acted both maliciously and with reckless disregard of the plaintiff's constitutional rights.

16.    In the manner described herein, the defendants deprived the plaintiff of her right to freedom from the use of unreasonable force by a police officer.  This right is secured to the plaintiff by the provisions of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

17.    In the manner described herein, the defendants deprived the plaintiff of her right to equal protection of the law.  This right is secured to the plaintiff by the Fifth and Fourteenth Amendments to the United States Constitution.

18.    In the manner described herein, the defendants deprived the plaintiff of her right to be free from unreasonable seizures. This right is secured to the plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

19.    In the manner described herein, the defendants deprived the plaintiff of her right to be free from unreasonable searches. This right is also secured to the plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

4

20.    In the manner described herein, the defendants deprived the plaintiff of her rights to be free from assault and battery, intentional infliction of emotional distress and negligence in the performance of police duties. All of these rights are secured to the plaintiff by the provisions of Connecticut law which are invoked under the pendent jurisdiction of this Court.

*WHEREFORE,* the plaintiff claims judgment against the defendants and each of them, jointly and severally as follows:

A.  Compensatory damages in an amount this Court shall consider to be just and fair;

B.  Punitive damages in an amount this Court shall consider to be just and fair;

C.  Attorney fees and the cost of this action;

D.  Such other relief as this Court shall consider to be fair and equitable.

## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury in this case.

THE PLAINTIFF

BY _____

E. Gregory Cerritelli
Federal Bar No.20784
Knight, Conway & Cerritelli, LLC
7-9 Elm St., Suite 2L
New Haven, CT 06510
(203) 624-6115

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY SESSION | : | |
| | : | |
| VS. | : | CIVIL NO. |
| | : | |
| QUINCY D. FREEMAN, | : | |
| OFFICER TEAGUE, | : | **3 0 0 C V 0 0 0 4 6**  JCH |
| OFFICER BRIGHT, | : | |
| OFFICER BLANCHARD, | : | |
| OFFICER L. ROHMER, | : | |
| OFFICER E. DIAZ, | : | JANUARY 5, 2000 |
| OFFICER M. FOSTER and | : | |
| SERGEANT STREETO | : | |

## C O M P L A I N T

1. This is an action to redress the deprivation by the defendants of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut. The defendants arrested the plaintiff on two occasions without a warrant or probable cause.

2. Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

3. During all times mentioned in this action, the plaintiff was, and still is, an adult citizen of the United States residing in West Haven,

1

Connecticut.

4. During all times mentioned in this action, the defendants and each of them were duly appointed officers in the police department of New Haven, Connecticut, acting in their official capacities. They are sued, however, only in their individual capacities.

5. During all times mentioned in this Complaint, the defendants were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Connecticut and the City of West Haven.

6. At all times mentioned in this Complaint, the defendants acted jointly and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendants but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries herein complained of.

7. On July 15, 1997, in the early morning hours, in the City of New Haven, the defendants Freeman, Teague, Bright and Blanchard approached the plaintiff while he was standing quietly and peacefully in the vicinity of 38 Hallock Street. They demanded that the plaintiff furnish them with identification. When the plaintiff questioned their right to make such a demand of him, the defendants grabbed the plaintiff, subjected him to

unreasonable force, and falsely arrested him on a charge of disorderly conduct. There was no legal or other basis for any of the aforesaid actions.

8. As a result, the plaintiff suffered loss of liberty, severe emotional distress and physical pain.

9. Between 1:00 a.m. and 2:00 a.m. on July 24, 1998, defendants Rohmer, Freeman, Diaz, Foster and Streeto followed the plaintiff's automobile as the plaintiff drove the said vehicle from Lamberton Street in the City of New Haven to the plaintiff's residence at 98 Lee Street in the City of West Haven. There, without the presence of any West Haven police officers, and in the absence of any legal jurisdiction, the defendants Rohmer, Freeman, Diaz, Foster and Streeto forced the plaintiff from his automobile at gunpoint, demanding to know his identity. They forced the plaintiff, still at gunpoint, to the ground, handcuffed him, twisting his arms painfully behind him, and then with a gun at his head slammed him against the car. The defendants searched the plaintiff's person, interrogating him as they did so, with a gun still at his head. Then they pushed him into a New Haven police cruiser.

10. The defendants Rohmer, Freeman, Diaz, Foster and Streeto thereupon held the plaintiff prisoner for approximately an additional 45 minutes while they searched his vehicle. At the conclusion of these

activities, they removed their handcuffs from the plaintiff's wrists and released him from custody.

11. As a result, the plaintiff suffered loss of liberty, severe emotional distress, and physical pain.

12. The defendants had no warrant of any kind for any of the activities described above.

13. In the manner described above, the defendants violated the plaintiff's rights to be free from warrantless arrest, warrantless search and seizure, unreasonable search and seizure of his person and effects, unreasonable force, and to enjoy both procedural and substantive due process of law. All of these rights are secured to the plaintiff by the provisions of the Fourth and Fourteenth Amendments to the United States Constitution.

14. The actions of the defendants also constituted assault, battery, false imprisonment, and intentional or reckless infliction of severe emotional distress through extreme and outrageous conduct, all in violation of Connecticut law.

WHEREFORE, the plaintiff claims judgment against the defendants and each of them, jointly and severally, as follows:

A. Compensatory damages in an amount this Court shall consider to be just, reasonable and fair;

B. Punitive damages in an amount this Court shall consider to be just, reasonable and fair;

C. Attorney fees and the costs of this action pursuant to 42 USC § 1988;

D. Such other relief as this Court shall consider to be fair and equitable.

## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury of all issues in this case.

THE PLAINTIFF

BY

JOHN R. WILLIAMS
51 Elm Street
New Haven, Connecticut 06510
(203) 562-9931
FAX: (203) 776-9494
Federal Bar No. ct00215
His Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MURRAY COLTON | : | NO. |
| v. | : | **3 0 0 C V 0 0 1 8 1**SRU |
| FRANCISCO ORTIZ, JR. | : | JANUARY 28, 2000 |

## COMPLAINT

### I. PRELIMINARY STATEMENT

This is a civil rights action brought pursuant to Title 42 U.S.C. §§ 1983 and 1988, against the defendant for the deprivation of rights guaranteed to the plaintiff by the fourth and fourteenth amendments to the United States Constitution.

In particular plaintiff claims monetary damages and other relief from the defendant who violated plaintiff's rights to due process under the law by unlawful arrest, illegal detention, malicious prosecution, and deprivation of liberty.

### II. JURISDICTION

1.    This action is founded upon 28 U.S.C. §§ 1331 and 1441(a), (b) and (c), as well as the aforementioned statutory and constitutional provisions.

2.    The plaintiff also invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 with respect to causes of action arising under the laws of the State of Connecticut.

### III.    PARTIES

3.    Plaintiff, Murray Colton, at all relevant times was a citizen of the State of Connecticut.

4.    Defendant Francisco Ortiz, Jr. was at all relevant times a police officer employed by the City of New Haven. He is named in his individual capacity.

## IV. FACTS

5.    On January 13, 1987, the body of Patricia Konesky was discovered in the third base dugout of the Kimberly Avenue field in New Haven.

6.    Konesky had suffered severe blunt trauma to her head and had been stabbed 248 times.

7.    On or about June 6, 1988, defendant Ortiz submitted to the Superior Court for the State of Connecticut an Arrest Warrant Application averring that there was probable cause to believe plaintiff Murray Colton murdered Konesky.

8.    In the Arrest Warrant Application, Ortiz represented to the Superior Court under oath that:

a.    On January 13, 1987, Konesky was found by the police lying on her back in the baseball dugout at Kimberly Field, which is adjacent to the end of St. Peter's Road in New Haven, Connecticut;

b.    Konesky had been stabbed approximately 250 times in the upper part of her body;

c.    On January 14, 1987 the State Medical Examiner ruled that Konesky's death was a homicide and that the cause of her death was blunt head trauma and multiple stab wounds to the neck and chest with internal injuries;

d.    Konesky frequented the Kimberly Avenue and Lamberton Street area ("the Kimberly Square area");

e.    Konesky was last seen alive at Don Philip's cafe located at 58 Kimberly Avenue, New Haven, Connecticut;

f.    The owner of Don Philip's cafe is Philip Colton, who at that time lived at 58 Kimberly Avenue with his son Murray Colton;

g.    Murray Colton stated that he arrived at the cafe at 10:15 p.m. on January 12, 1987, that he spoke with Patricia Konesky, and that he saw her leave the cafe at about 10:30 p.m.;

h.    On March 28, 1998, Janice Tourangeau contacted the police saying she had helpful information about the Konesky homicide;

i.    When interviewed by Detectives Ortiz and Everett Nichols, Tourangeau stated:

i.    she had been with Konesky the night of her death;

ii.    she observed Konesky being killed in the baseball field dugout;

iii.    one of the perpetrators of the homicide was Murray Colton;

iv.    there was a second perpetrator, a white or latin male with curly hair and a mustache, whom she was unable to identify;

v.    she ran onto Kimberly Avenue from the baseball field and was able to flag down a passing motorist as she was yelling and screaming in the middle of the street;

vi.    the next day she was watching television with Vivian Weyel, a friend, when a television reporter announced that the New Haven Police Department was investigating the death of a white female that was found in the Kimberly Avenue baseball field dugout and that Tourangeau stated to Weyel that she already knew the identity of the person had to be Patricia Konesky; and

vii.    on January 13, 1987, she was watching television with friends, including one Jacqueline Boyles, at the Tremont Motel in West Haven when a television reporter announced that the New Haven Police Department was investigating the death of a white female found in the Kimberly Avenue baseball field dugout and that Tourangeau told

3

Boyles and the others in the room that the woman was Patricia Konesky and that it was a shame Konesky had died such a terrible death after being beaten.

      j.     Ortiz interviewed Vivien Weyel, who said she remembered watching television with Tourangeau and Tourangeau knowing the identity of the murdered woman;

      k.     Ortiz interviewed Jacqueline Boyles, who said she remembered watching television with Tourangeau and Tourangeau knowing the identity of the murdered woman;

      l.     Defendant Detective Sergeant Michael J. Sweeney located and interviewed Anthony Harris, who stated he knew Patricia Konesky and the last time he saw her was on the evening of January 12, 1987 near midnight when he was in a car and she was walking on Greenwich Avenue towards Second Street (in the direction of the Kimberly Avenue baseball field) in the company of Murray Colton;

      m.     Detective J. Pettola interviewed John Carlson, who was a passenger in Anthony Harris' car on January 12, 1987, who also stated that he and Mr. Harris drove by Konesky walking together with someone whom he knew as the son of the owner of Don Philip's cafe; and

      n.     The foregoing established probable cause to believe that Murray Colton murdered Konesky.

    9. Defendant Ortiz knowingly and intentionally or with reckless disregard for the truth omitted material information from the Application as stated below:

      a.     the initial police investigation of the Konesky murder did not lead to an arrest;

      b.     on February 5, 1988, the state announced a $20,000 reward for information leading to the conviction of the person or persons responsible for Konesky's death;

      c.     on January 19, 1987, before the announcement of the award, defendant Ortiz questioned Tourangeau about the murder, and Tourangeau said she had last seen the

4

victim at 3:00 p.m., Tourangeau never mentioned Murray Colton, and in fact told Ortiz to investigate someone else;

      d.    Tourangeau only contacted the police with "new" information after the announcement of the reward;

      e.    Tourangeau was a notorious drug addict who became particularly desperate for money in March 1988 when she gave the "new" statement;

      f.    Tourangeau had been arrested for prostitution by the New Haven Police Department just prior to giving the "new" statement;

      g.    Tourangeau had a long history of manipulation of the criminal justice system, misrepresentation, and implications of others in criminal activity, which was well-documented in numerous New Haven Police Department reports;

      h.    The New Haven Police Department had such doubts about Tourangeau's veracity that it arranged three lie detector sessions within days of the "new" statement;

      i.    Tourangeau failed all three lie detector tests;

      j.    Tourangeau said she could see the crime including details such as a mustache on the perpetrator, although this was physically impossible because she claimed to have seen the crime from over 180 feet away at night in an unlit field;

      k.    Despite attempts to corroborate Tourangeau's presence at Kimberly Avenue the night of the murder, the New Haven Police were not able to find anyone who could place Tourangeau in the area that night; and

      l.    Tourangeau's housemate Weyel reported to the police that Tourangeau came home and changed her clothes five hours after the murder occurred, under circumstances which strongly suggested Tourangeau's own involvement in the murder.

     10. Officer Ortiz knowingly and intentionally or with reckless disregard for the truth falsely stated in the Arrest Warrant Application that Tourangeau told Boyles that it was a

shame Konesky died, when in fact it was reported to him that Tourangeau told Boyles that Konesky deserved to die.

11.    Based on the Arrest Warrant Application submitted by defendant Ortiz, on June 9, 1998 the Court made a finding of probable cause and an arrest warrant issued.

12.    But for the misrepresentations in and material omissions from the Arrest Warrant Application, the Superior Court would not have found probable cause on June 9, 1988.

13.    On June 13, 1988, defendant Ortiz arrested plaintiff based upon the warrant which he had sought.

14.    On September 3, 1998, the Superior Court dismissed the charges against Colton, resulting in the termination of the proceedings in Colton's favor.

15.    The actions of the defendant were reckless or intentional and violated the plaintiff's constitutional and civil rights.

16.    The actions of the defendant were willful or wanton and undertaken without regard to the rights of the plaintiff.

17.    As a result of defendant's actions, plaintiff received a great amount of unfavorable publicity, damaging his reputation and causing him to experience humiliation, disgrace, and mental anguish.

18.    As a further result of defendant's actions, plaintiff was held in lieu of bond, suffered severe emotional distress, incurred substantial legal expenses, lost employment opportunities and time from work, and has a diminished earning capacity.

### FIRST COUNT (§ 1983 and § 1988 Unlawful Arrest, Illegal Detention, Malicious Prosecution and Deprivation of Liberty)

19.    Paragraphs 1 through 18 are hereby fully incorporated by reference as if fully set forth herein.

20.    The actions described above violated clearly established and well-settled constitutional rights and privileges of Colton, in his rights to be free from unlawful and unreasonable arrest and prosecution.

21.    The charges against Colton were baseless, and violated his fourth and fourteenth amendments under the United States Constitution.

22.    The aforementioned acts of defendant constituted unlawful arrest, illegal detention, malicious prosecution and deprivation of liberty, all in violation of the fourth and fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983.

23.    The actions described above violated clearly established and well-settled rights and privileges or the right to be free from arbitrary, malicious and discriminatory prosecution and official misconduct.

24.    The arrest of plaintiff was accomplished without probable cause and was otherwise unlawful.

**SECOND COUNT (Malicious Prosecution)**

25.    The allegations contained in paragraphs 1 through 18 are hereby fully incorporated by reference as if fully set forth herein.

26.    The aforedescribed acts and conduct of the defendant constituted false imprisonment, malicious prosecution, and intentional infliction of emotional distress, under the laws of the State of Connecticut.

27.    In addition said acts and conduct violated Article I §§ 4, 7, and 9 of the Connecticut Constitution.

WHEREFORE, the plaintiff prays that this Court:

1.  Award compensatory damages to the plaintiff;

2.  Award punitive damages to the plaintiff;

3.  Award costs of this action;

4.  Award attorney's fees pursuant to 42 U.S.C. § 1988;

5.  Grant such other and further relief as law and equity may provide.

THE PLAINTIFF,
MURRAY COLTON

By _____

William M. Bloss, ct01008
Alinor C. Sterling, ct17207
JACOBS, GRUDBERG, BELT & DOW,   P.C.
350 Orange Street
New Haven, CT  06503
Phone:  (203) 772-3100
Facsimile: (203) 772-1691
His Attorneys

8

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

**MICROFILM**

**MAR 28 2003**

FILED

2003 MAR 27 P 3: 35

US DISTRICT COURT
BRIDGEPORT CT

MURRAY COLTON

v.                                    3:00CV181 SRU

FRANCISCO ORTIZ, JR.

## JUDGMENT

This cause came on for trial before a jury and the Honorable Stefan R. Underhill, United States District Judge. On March 26, 2003, and after deliberation, the jury returned a verdict in favor of the defendant Francisco Ortiz, Jr.

Therefore, it is ORDERED and ADJUDGED that judgment is entered for the defendant and the case is closed.

Dated at Bridgeport, Connecticut, this 27th day of March, 2003.

KEVIN F. ROWE, Clerk

By _____
Deputy Clerk

Entered on Docket 3/27/03