**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**MARTY CALDERON**                    **CASE NO.: 3:02 CV 1767 (SRU)**

**VS.**

**PAUL CAVALIER, ET AL.**             **OCTOBER 14, 2005**

## PLAINTIFF'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

The plaintiff hereby submits additional proposed jury instructions to this court for the trial scheduled date of, October 31, 2005.

The Plaintiff respectfully submits the following Jury Instructions pursuant to, Martin Scwartz and George C. Pratt, "Section 1983 Litigation, Jury Instructions," Volume 4, 2005 Supplement, Aspen Publishers.

**Plaintiff's Proposed Jury Instructions**

**Warrantless Seizure in Home-Exigent Circumstances-Fourth Amendment**

The Plaintiff asserts that the seizure of the Plaintiff in her home by the Defendant police officer without a warrant issued by a neutral magistrate violated her right to be free from an unreasonable seizure, a right protected by the Fourth Amendment to the United States Constitution.  Normally, a police officer may not seize a citizen in their home without first obtaining a warrant from a magistrate or judge.  The Defendant officer, however, contends that, although he did not have a warrant the seizure was justified by probable cause.  Under the law, exigent circumstances can justify a warrantless entry by the police into the home when:

1

1. There is probable cause to believe that a suspected felon is likely to flee from the home before the police officer can obtain a warrant; or

2. The police officer is in hot pursuit of a fleeing felon; or

3. There is probable cause to believe there is an imminent danger that evidence of crime will be destroyed; or

4. There is probable cause to believe there is a risk of danger to the safety of the police or to other persons inside or outside the dwelling.

Police officers, however, may not justify a warrantless search with exigent circumstances of their own making.

You will determine, however, may not justify a warrantless seizure of a person in their home without exigent circumstances of their own making.

You will determine, by answering the questions I will give you, the circumstances that confronted officer Paul Cavalier at the time of his warrantless seizure of the Plaintiff in her home. Based on your determination of these facts, I will determine as a matter of law whether there were exigent circumstances justifying the warrantless seizure of the Plaintiff in her home. Attributed: Drafted by the authors based upon analysis in Minnesota v. Olson, 495 U.S. 91 (1990) and Tamez v. San Marcos, 119 F.3d. 1085 (5th Cir. 1997). See also Hancock v. Dodson, 958 F.3d. 1367 (6th Cir. 1992); Jones v. Lewis, 874 F.2d. 1125 (6th Cir. 1989).

**Specific Violations-Fourth Amendment**

The Plaintiff claims that the defendants violated her rights under the Fourth Amendment to the U.S. Constitution. The Fourth Amendment reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Every person has the constitutional right to be free from the unreasonable search and/or seizure of her person by law enforcement agents. You must determine whether any searches or seizures which you find took place were reasonable under constitutional standards.

You should take into account all facts and circumstances which were known, or which should have been known, by the Defendants when you are assessing their liability to the Plaintiff. The question you must answer is whether in the face of such facts and circumstances the Defendant treated Plaintiff unreasonably and violated her constitutional rights, as I shall define them for you. See California v. Hodari D., 489 U.S. 621 (1991); U.S. v. Mendenhall, 446 U.S. 544, 554 (1980). (The level of proof required to justify a seizure will depend upon the intrusiveness of the seizure)

### Definition of a Fourth Amendment Search and Seizure

The Fourth Amendment prohibits the unreasonable "seizure" of a person. A person is "siezed" within the meaning of the Fourth Amendment when in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not

3

attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

If you find that the Plaintiff was seized under this definition and that the Defendant did not have sufficient cause for the seizure, then you must find that the seizure violated the Plaintiff's constitutional rights.  See Id. <u>California</u>.

## No Specific Intent

42 U.S.C. Section 1983 does not require the Plaintiff to demonstrate that the Defendant acted willfully, or with the specific intent to violate the Plaintiff's federally protected rights.  Nor does 42 U.S.C. Section 1983 require the Plaintiff to show that the Defendant abuse governmental power.

## Gender Motivated Arrest-Mixed Motive-Use of Force and Initiation of Criminal Proceedings

Plaintiff claims that the Defendant, Officer Paul Cavalier,  arrested her, employed unreasonable force in making the arrest, and initiated criminal proceedings against him because of her gender.  Plaintiff claims that these actions by Officer Paul Cavalier violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.  The Equal Protection Clause requires the state to treat similarly situated individuals alike.  The Equal Protection Clause protects against selective enforcement of the law based upon impermissible criteria, such as gender.

In order to prove her claim, the Plaintiff must prove by a preponderance of

4

the evidence two elements:

1. That the Plaintiff, compared with others similarly situated, was selectively treated by Officer Paul Cavalier, and

2. That Officer Paul Cavalier's selective treatment of the Plaintiff was deliberately based on the Plaintiff's gender.

For the first element, you have heard the evidence with respect to Officer Paul Cavalier's conduct toward the Plaintiff and toward other people. You must determine if Officer Paul Cavalier selectively treated the Plaintiff on this occasion. If he did not, then your verdict will be for the Defendant. If he did selectively treat the Plaintiff then you will consider the second element; whether the selective treatment was deliberately based on the Plaintiff's race.

The second element is satisfied if you find, by a preponderance of the evidence, that Officer Paul Cavalier's conduct toward the Plaintiff was motivated, at least in substantial part, by the Plaintiff's gender. Officer Paul Cavalier must have acted deliberately, with this impermissible purpose in mind. If the Plaintiff has not proven this claim, then your verdict will be fore the Defendant.

If Plaintiff does prove her claim, then you must also consider whether Officer Paul Cavalier has proved, by a preponderance of the evidence, that he would have taken the same action even if he was not motivated by the Plaintiff's race. If you find that Officer Paul Cavalier would have arrested the Plaintiff, initiated criminal proceedings against her, or used force against her regardless of whether Officer Paul Cavalier had an gender motivated animus

5

against the Plaintiff, then your verdict will be for the Defendant. If Officer Paul
Cavalier has not proved by the preponderance of the evidence that he would
have taken the same action even if he was not motivated by the Plaintiff's
gender then your verdict will be for the Plaintiff.

**Police Officer and Civilian Witnesses**

You have heard the testimony of the witnesses who are civilians and the
testimony of witnesses who are police officers.

In evaluating this testimony, you are to apply the same standards of
evaluation to each witness. You shall not give any greater or lesser weight to
the testimony of a witness solely because of his occupation as a police
officer. Attribution: Adapted from Perla v. Village of Hempstead, E.D.N.Y. 90
Civ. 3182 (ADS)(Hon. Arthur D. Spatt)(February 11, 1993).

**Excessive Force-Unconstitutional Arrest and Seizure-Special verdicts**

The Plaintiff claims that while the Defendants were acting under color of
authority of the State of Connecticut as members of the New Haven Police
Department, they intentionally violated the Plaintiff's constitutional right not be
to be arrested or seized without probable cause; not to be subjected to an
unreasonable seizure in one's home or dwelling; and not to be subjected to
excessive or unreasonable force during an arrest.

Federal law, specifically a statute known as 42 U.S.C. Section 1983,
provides that a person may sue in this court for an award of money damages
against anyone who, under color of any state law or custom, violates the the
Plaintiff's rights under the Constitution of the United States.

6

Under the Fourth Amendment to the Constitution of the United States, every citizen has the right not to be arrested without probable cause, not to be subjected to an unreasonable seizure in one's home or dwelling, and not to be subjected to excessive or unreasonable force while being arrested by a law enforcement officer, even though the arrest itself may be lawful.

In order to prevail on his claims, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the Defendants intentionally committed acts that violated the Plaintiff's federal constitutional rights not to be arrested without probable cause, not to be subjected to an unreasonable seizure in one's home or dwelling, and not to be subjected to excessive or unreasonable force during an arrest;

Second: That in so doing the Defendants acted under color of the authority of the State of Connecticut; and

Third: The Defendants acts were the proximate cause of damages sustained by the Plaintiff.

In the verdict form that I will explain in a moment, you will be asked to determine a series of factual questions concerning each of these issues.

## Municipal Liability under 7-465

Statute states that a municipality shall pay on behalf of an employee of such municipality all sums which such employee becomes obligated to pay be reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or

7

property if the employee was acting in the performance of his duties and within the scope of his employment.

Violation of person's civil rights by individual public officers permits award of compensatory and punitive damages and attorney fees. City of West Haven v. Hartford Ins. Co., 594 A.2d. 495, 41 Conn. Supp. 548 (1990).

**Legal Analysis of MUNICIPAL Liability:**

For the city to be liable on arrestee's claims that police officers negligently assaulted him and negligently failed to use due care in handling their firearms, arrestee was not required to show affirmative link between official municipal policy or decision and alleged tort. See Jonelis v. Russo, D. Conn. 1994, 863 F.Supp. 84, Skrobscz v. Sweeney, 858 A.2d. 899, 49 Conn. Supp. 15 (2003).

Equal Protection Claim

To establish an equal protection claims, the Plaintiffs must establish (1) that they were selectively treated as compared to other similarly situated persons; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to punish the exercise of constitutional rights, or malicious bad faith intent to injure. See Crowley v. Courville, 76 F.3d. 47, 52-53 (2d Circuit 1996).

8

FORDHAM LAW REVIEW, TAKING HISTORY SERIOUSLY, VOLUME LXXII, APRIL 2005, NUMBER 5, MUNICIPAL LIABILITY UNDER 42 U.S.C. SECTION 1983 AND THE DEBATE OVER RESPONDENT SUPERIOR (quotations).

FORMAL POLICY BASED LIABLITY:

Under this theory, a municipality will be liable for an employee's constitutional wrong if the employee's conduct executed or implemented an official policy adopted by the city's lawmakers. See Monell v. Dept. Social Services, 436 U.S. at 690, and Owen, 445 U.S. at 652., 660, 661. The Board of Education and the Department of Social Services had each officially adopted an unconstitutional maternity leave policy, and the Plaintiffs' supervisors simply carried out that policy when they directed the Plaintiffs to take medically unnecessary maternity leaves. (In this case scenario, the Defendants adopted an unconstitutional policy of illegally arresting the Plaintiff in her home without a warrant outside of the Defendant's jurisdiction based on an alleged crime not committed in their presence.

CUSTOM BASED LIABILITY:

A municipality will be liable if the employees acted pursuant to the city's governmental custom, even if that custom had never been formally adopted by the city's lawmakers, see Monell, 436 U.S. at 690-691. Custom based municipal liability recognizes the existence of practices that might be considered the city's administrative common law-a set of practices so well-settled that they have the force of law. For example, a municipality may have a longstanding, consistent practice of arresting women and not men without a

warrant.

## TRAINING/SUPERVISION-BASED LIABILITY:

Under the inadequate training or supervision theory, cities are liable for the constitutional wrongs of their employees if two requirements are met. First, the failure to train or supervise must be so deficient that it shows "deliberate indifference to the rights" of those with whom the employees will interact. City of Canton, 489 U.S. 378, 388, 391 (1989). Second, the failure must have actually caused the wrongdoing to occur. Deliberate indifference will be found where the nature of the employees' duties or a previous pattern of violations makes it obvious that without further training, the employees are highly likely to violate citizens federally protected rights. If the officers demonstrate a pattern of lying under oath, the need for further training or supervision becomes obvious, and the continued failure to provide it will constitute deliberate indifference. If adequate training or supervision would have prevented the violation, the municipality would be liable. See Dorman v. Dist. Of Columbia, 888 F.2d. 159, 165,166.

### Additional Legal Theories

The City can be liable under Section 1983 if an official custom or policy of the City caused a violation of Plaintiff's constitutional rights, see Monell v. Dept. of Soc. Services, 436 U.S. 658, 692 (1978).

According to Pembaur v. City of Cincinatti, 475 U.S. 469, 481-484, 106
S.CT. 1292, (1986)(single decision by official responsible for establishing final
policy may give rise to municipal liability. Jantz v. Muci, 976 F.2d. 623, 630, (10th
Circuit 19920, cert denied, 508 U.S. 952, 113 S. CT. 2445, (1993). Ledbetter v.
City of Topeka, Kan., 318 F.3d. 1183, 1189 (10th Circ. 2003).


Pembaur, 475 U.S. 469, 480(1986): With this understanding, it is plain
that municipal liability may be imposed for a single decision by municipal policy
makers under appropriate under appropriate circumstances. No one has ever
doubted, for instance, that a municipality may be liable under 1983 for a single
decision by its properly constituted legislative body-whether or not that body had
taken similar action the past or intended to do so in the future-because even a
single decision by such a body unquestionably constitutes an act of official
government policy. See, eg., Owen v. City of Independence, 445 U.S. 622
(1980). But the power to establish policy is no more the exclusive province of
the legislature at the local level than at the state or national level. Monell's
language makes clear that is expressly envisioned other officials whose acts or
edicts may fairly be said to represent official policy, Monell, Id. at 694, and whose
decisions therefore may give rise to municipal liability under 1983.

Pembaur, 475 U.S. 469, 482, (1986): To hold a municipality liable for
actions ordered by such officers which have authority to establish binding county
policy respecting particular matters and to adjust that policy for the county in
changing circumstances. To hold a municipality liable for actions ordered by

11

such officers exercising their policy making authority is no more an application of the theory of respondent superior than was holding the municipalities liable for the decision to take unlawful action made by municipal policy makers. We hold that municipal liability under 1983 attaches where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

The Deputy Sheriffs who attempted to serve the capiases at petitioner's clinic found themselves in a difficult situation. Unsure of the proper course of action to follow, they sought instructions from their supervisors. The instructions they received were to follow the orders of the County Prosecutor. The Prosecutor made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic. That decision directly caused the violation of petitioner's Fourth Amendment rights.

Pembaur, 475 U.S. 469, 485 (1986): In ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decision maker for the County, and the county may therefore be held liable under 1983.

Pembaur Footnotes, The opinion below also can read as holding that municipal liability cannot be imposed for a single incident of unconstitutional conduct by municipal employees whether or not that conduct is pursuant to municipal policy. Such a conclusion is unsupported by either the language or reasoning of Monell, or by any of our subsequent decisions. As we explained last Term in Oklahoma City v. Tuttle, 471 U.S. 808, 831, 832 (1985), once a

12

municipal policy is established, it requires only one application, to satisfy fully

Monell's requirement that a municipal corporation be held liable only for

constitutional violations resulting from the municipality's official policy. (Brennan,

J., concurring in part and concurring in the judgment.)

Footnote 10, Section 1983 also refers to deprivations unde color a state

custom or usage, and the Court in Monell noted accordingly that local

governments, Pembaur, 475 U.S. 469, 482, (1986), like every other 1983 person

may be sued for constitutional deprivations visited pursuant to governmental

custom eve though such a custom has not received formal approval through the

body's official decision making channels. A 1983 Plaintiff thus may be able to

recover from a municipality without adducing evidence of an affirmative decision

by policy makers if able to prove that challenged action was pursuant to a state

custom or usage.

Pembaur, Footnote 11: Respondent argues that the holding in Tuttle is far

broader than this. It relies on the statement near the end of Justice Rehnquist's

plurality opinion that proof of a single incident of unconstitutional activity is not

sufficient to impose liablility under Monell unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which

policy can be attributed to a municipal policymaker. Pembaur, 471 U.S. at 823-

824. Respondent contends that a policy cannot be said to be existing unless

similar action has been taken in the past.

The trial judge instructed the jury that a single, unusually excessive use of

force may warrant an inference that it was attributable to grossly inadequate

training, and that the municipality could be held liable on this basis. We reversed the judgment against the city. Although there was no opinion for the Court on this question, both the plurality and the opinion concurring in the judgment found plaintiff's submission inadequate because she failed to establish that the unconstitutional act was taken pursuant to a municipal policy rather than simply resulting from such a policy in a but for sense. (Brennan, J., concurring in part and concurring in judgment). That conclusion is entirely consistent with out holding today that the policy which ordered or authorized an unconstitutional act can be established by a single decision by proper municipal policy makers.

Justice White, concurring, "There is no reason to believe that respondent county would abjure using lawful means to execute the capiases issued in this case or had limited the authority of its officers to use force in executing capiases. Further, the county officials who had the authority to approve or disapprove such entries opted for the forceful entry, a choice that was later held to be inconsistent with the Fourth Amendment. Vesting discretion in its officers to use force and its use in this case sufficiently manifested policy to warrant reversal of the judgment below."

In this case, however, the Sheriff and the Prosecutor chose a course that was not forbidden by any applicable law, Pembaur, 475 U.S. 469, 487 choice that they then had the authority to make. This was county policy, and it was no less so at the time because a later decision of this Court declared unwarranted forceful entry into third-party premises to be violation of the Fourth Amendment.

Justice Stevens, concurring in part and concurring in the judgment:

14

"When police officers chopped down the door to petitioner's premises in order to serve capiases on two witnesses, they violated petitioner's constitutional rights. Steagald v. U.S., 451 U.S. 203 (1981), Pembaur, 475 U.S. 469, 488, makes it perfectly clear that forcibly entry to a third party's premises to execute an arrest warrant is unconstitutional if the entry is without a search warrant and in the absence of consent or exigent circumstances.

When petitioner refused to allow the Sheriffs to enter, one of them, at the request of his supervisor, called the office of the County Prosecutor for instructions. The assistant County Prosecutor received the call, and apparently was in doubt as to what advice to give. He referred the question to the County Prosecutor, who advised the Deputy Sheriffs to go in and get them the witnesses pursuant to the capiases.

## FINAL POLICYMAKING AUTHORITY

Lytle v. Carl, 382 F.3d. 978 (9th Circuit 2004). Whether a particular official has final policymaking authority is a question of state law. The identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. See Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, (1989). See also Christie v. Iopa, 176 F.3d. 1231, 1235 (9th Cir. 1989). **"Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused he deprivation of rights at**

15

**issue. See also City of St. Louis Proprotnik, 485 U.S. 112, 126, 108 S.Ct. 915, (1988).**

Depending on the circumstances, however, we may also look to the way a local government entity operates in practice. See Jett v. Dallas, 491 U.S. at 737, (trial judge must identify official policy makers based on "state and local positive law, as well as custom or usage having the force of law. While authority to make municipal policy may be granted directly by a legislative enactment, it may also be delegated by an official who possess such authority. See Pembaur v. Cincinnatti, 475 U.S. 469, 483, (1986).

For the purposes of Monell liability, term "POLICY" includes within its' definitions not only policy in the ordinary sense a rule or practice applicable in many situations. It also includes a course of action tailored to a particular situation and not intended to a particular situation and not intended to control decisions in all situations. Id. Pembaur.

In determining whether an individual has final policy making authority, we ask whether he or she has authority in a particular area, or on a particular issue, see Monroe County, 117 S.Ct. 1734. For a person to be the final policy maker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the District. It does not matter that the final policy maker may have subjected only one person to only one unconstitutional action. See Christie v. Iopa, 176 F.3d. 1231, 1235 (9th Cir. 1989). A municipality can be liable for an isolated constitutional violation when the person causing the violation has final policy making authority, see Id. 176

16

F.3d. At 1235.

McNabola v. Chicago Transit Auth., 10 F.3d. 501, 511 (7th Cir.)(1993). Plaintiff's evidence has been held sufficient where it demonstrates a practice so significant or widespread that constructive knowledge may be inferred. It may be concluded that appropriate policy makers acquiesced in such practices, even where the Plaintiff does not or cannot show that specific individuals consciously refused to make reforms.

In, OKLAHOMA CITY V. TUTTLE, 471 U.S. 808, 809 (1985),

Justice Rehnquist delivered the opinion of this court:

PG. 812-813: "Absent more evidence of supervisory indifference, such as acquiescence in a prior matter of conduct, official policy such as to impose liability under the federal Civil Rights Act cannot ordinarily be inferred from a single incident of illegality such as a first excessive use of force to stop a suspect; but a single, unusually excessive use of force may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or gross negligence on the part of the officials in charge. The city cannot be held liable for simple negligence. Furthermore, the Plaintiff must show a causal link between the police misconduct and the adoption of a policy or plan by the Defendant municipality.

pg. 814: We granted certiorari because the Court of Appeals holding that proof of a single incident of unconstitutional activity by a police officer could suffice to establish municipal liability seemed to conflict with the decisions of other Courts of Appeals. We reverse.

17

pg. 815: Federal Rules of Civil Procedure 51 requires counsel objecting to a jury instruction to state distinctly the matter to which he objects and the grounds of his objection.

pg. 816: In this case respondent's claim is that her husband was deprived of his life "without due process of law, in violation of the Fourteenth Amendment, or that he was deprived of his right to be free from the use of excessive force in his apprehension-presumably a right secured by the Fourth and Fourteenth Amendments. Having established a deprivation of constitutional right, however, respondent still must establish that the city was the deprivation. <u>Monell</u> teaches that the city may only be held accountable if the deprivation was the result of municipal custom or policy.

pg. 820: Respondent offered direct evidence that the shooting was caused by municipal policies. The officer who shot Turtle testified that city training policies were inadequate and had led to Tuttle's death. The official who was Chief of Police when Tuttle was shot insisted that the shooting was entirely consistent with city policy.

pg.820-821:The District Court apparently accepted this theory of liability, though it charged the jury that the city's policy makers could not merely have been negligent in establishing training policies, but that they must have been guilty of "gross negligence" or "deliberate indifference" to the police misconduct."

Respondent then proceeds to argue that the question presented by petitioner-whether a single isolated incident of the use of excessive force by a

18

police officer establishes an official custom or policy of a municipality-is in truth not presented on this record because there was more evidence of an official policy of inadequate training than might be inferred from the incident giving rise to Tuttle's death.

pg. 822:Respondent contends that Monell suggests the contrary result, because it expressly provided that an official decision would suffice to establish liability, although a single decision will often have only a single victim.  The policy of the New York City Department of Social Services that was challenged in Monell was a policy that by its terms compelled pregnant employees to take mandatory leaves of absence before such leaves were required for medical reasons; this policy in and of itself violated that constitutional rights of pregnant employees by reason of our decision in Cleveland Board of Education v. LaFleur, 414 U.S. 632 (1974).  Obviously, it requires only one application of a policy such as this to satisfy fully Monell's requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy.(Similar to the present case).

Here, however, the "policy" that respondent seeks to rely upon is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell.  To establish the constitutional violation in Monell no evidence was needed other than a statement of the policy by the municipal corporation, and its exercise but the type of policy upon which respondent relies, and its causal relation t the alleged constitutional violation, are not susceptible to such easy proof.  In the first place, the word "policy" generally implies a course of

19

action consciously chosen from among various alternatives, it is therefore difficult in one sense even to accept the submission that someone pursues a policy of inadequate training, unless evidence be adduced which proves that the inadequacies resulted from conscious choice that is, proof that the policy makers deliberately chose a training program which would prove inadequate.(Present case, what were the alternatives).

At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.

pg. 823-824:Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

Otherwise the existence of the unconstitutional policy, and its origin, must separately proved. **(KEY:IF UNCONSTITUTIONAL VIOLATION, PLAINTIFF ONLY NEEDS ONE INCIDENT, SEE OKLAHOMA V. TUTTLE, 471 U.S. 808, 824, (1984))**

PG. 824: But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation.

For other case law, see Board of Commissioners v. Brown, 520 U.S. 397 (1997), Cantou v. Harris, 489 U.S. 378 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112(1988); Pembaur v. Cincinnati, 475 U.S. 469 (1986), Newport v.

20

Fact Concerts, 453 U.S. 247 (1981), Menotti v. City of Seattle, 2005 U.S. App.

Lexis 10040, 409 F.3d. 1113; Liptak v. City of Niles, 1999 U.S. App. Lexis

29984, (6th Circuit); Loveday v. Village of Villa Park, 2003 U.S. District Lexis

13416; Vippolis v. Haverstraw, 768 F.2d. 40, 43, 1985 U.S. App. Lexis 20792.


THE PLAINTIFF

BY: _Marty Calderon_

Marty Calderon, Pro Se
P.O. Box 503
Norwalk, CT  06852
Telephone:  (860) 593-3592


## CERTIFICATION


I certify that the Plaintiff has delivered the Plaintiff's Proposed Jury Instructions to
the Defendants on October 14, 2005 by U.S. mail to:

Michael A. Wolak, III
Assistant Corporation Counsel
165 Church St., 4th floor
New Haven, CT  06510
Federal Bar # ct12681
Telephone: (203) 946-7970 or 7958
Fax # (203) 946-7942
E-mail:  mwolak@newhavenct.net
Their Attorney

THE PLAINTIFF

BY: _Marty Calderon_

Marty Calderon, Pro Se
P.O. Box 503
Norwalk, CT  06852
Telephone:  (860) 593-3592