## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTY CALDERON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:02CV1767(SRU) |
| PAUL CAVALIER, | : | |
| Defendant. | : | |
| | : | |
| | : | |

### JURY INSTRUCTIONS

Members of the jury, you now have heard all of the evidence. At this point, I am going to instruct you about the law that applies to this case. At the outset, I want to express my thanks to you for the time and energy you have devoted to this trial. Jury service is rarely convenient, but without you justice could not be done in this case.

It will take some time for me to read these instructions to you but it is important that you listen carefully and pay close attention. You have been provided with a copy of my instructions so that you can read along as we go. Please do not write on these copies because they will be collected at the end of my instructions and you will not be permitted to take them into the jury room with you. Only one official copy will be allowed in the jury room for your consideration. If you wish to take notes, please use your notebooks.

My instructions will be in three parts: First, I will discuss general rules concerning the role of the court and the duty of the jury; second, I will go over the issues in this case and set out the specific questions of fact that you must answer based on the evidence at trial; and third, I will give you some rules and guidelines for your deliberations.

Before we begin, I ask you to look over the other document that was placed on your seats-- namely, the verdict form.  After I have given these instructions and you hear the closing arguments of counsel, you will go back into the jury room to deliberate. You will have with you the following: the original of the verdict form, the original exhibits, a copy of these instructions, and any personal notes that you may have taken.  At the conclusion of your deliberations, you will use the verdict form to report your verdict to the court and the parties.

## SECTION I: GENERAL INSTRUCTIONS

### ROLE OF THE COURT

As Judge, I perform basically two functions during the trial.  First, I decide what evidence you may consider.  You have heard me doing that throughout the trial.  Second, I instruct you on the law that you are to apply to the facts in this case.  I gave you some preliminary instructions before trial began, and some during the course of the trial, but it is now—at the close of evidence—that most of the instructions are given, so please be patient and listen closely.

If either of the lawyers state the law differently from the way I am explaining it to you, you are to follow my instructions.

### INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

This is a long instruction, and I may repeat certain parts.  That does not mean that those parts should be emphasized.  You should not single out any one part of my instructions and ignore the rest.  Instead, you should consider all of the instructions as a whole and consider each instruction in light of all the others.  The order in which I give you instructions does not  indicate

their relative importance. Do not read into these instructions, or into anything I have said or done, any suggestion about what verdict you should return-- that is a matter for you alone to decide.

I should also point out that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

## BOTH SIDES ENTITLED TO FULL AND FAIR HEARING

Regardless of your ultimate decision about the parties' claims and defenses, the parties in this case are entitled to a full and fair hearing. You must remember that one of the most important functions of our system is to give all the parties to a dispute a full and fair hearing, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right.

## OBJECTIONS AND RULINGS

It is the duty of an attorney to object to testimony or other evidence that the attorney believes is not properly admissible. You should not prefer or dislike an attorney or his client because the attorney made objections -- or because the attorney failed to make objections.

If I have allowed testimony or evidence that an attorney objected to, you should not give that evidence greater or lesser weight. My rulings on objections have nothing to do with the credibility of the witnesses.

If I have sustained an objection to a question asked of a witness, you must disregard the

question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if he or she had been permitted to answer the question. If I have granted a motion to strike, you must disregard the part of the answer that was stricken, because it is not evidence.

## DUTIES OF THE JURY

It is your duty to find the facts from all the evidence in the case. In reaching a verdict you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you. Regardless of any opinion you may have about what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you. And you must do your duty as jurors without consideration of any personal likes, dislikes, opinions, prejudices, or sympathies. In other words, you must decide the case solely on the evidence before you, and you must do so fairly and impartially.

The verdict you reach must be unanimous; that is, agreed upon by each of you.

You must each decide the case for yourself, but do so only after impartial consideration of the evidence in the case with your fellow jurors.

## "PROVE," "FIND," AND "ESTABLISH"

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the plaintiff must do in order to win this case. My use of the word "prove" means "prove by the appropriate burden of proof," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts, you must find those facts to have been

proven by the plaintiff by the appropriate burden of proof, even if I simply use the word "find." Likewise, I will speak of the parties "establishing" various facts. Even if I simply use the word "establish," you must find that fact to have been established by the appropriate burden of proof.

## BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE

Because this is a civil case, the plaintiff has the burden of proving every disputed part of her claims by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence, the plaintiff must prove that the fact is more likely true than not true. In other words, if you find that the credible evidence on a given issue is evenly divided between the plaintiff and the defendant, then you must decide that issue for the defendant. However, if the plaintiff proves that a fact is more likely true than not, even slightly more true than not, then you are to find that the plaintiff has proven the fact by a preponderance of the evidence.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

## SECTION II: ISSUES IN THIS CASE

## SECTION 1983 CLAIMS

Now, let me turn to the specific claim in this case.  The plaintiff, Marty Calderon, brings

a claim pursuant to Section 1983 of Title 42 of the United States Code, which is often referred to

simply as "Section 1983."  Section 1983 provides that a person may seek relief in this court by

way of damages against anyone who, under color of any state law or custom, subjects such

person to the deprivation of any rights, privileges, or immunities secured or protected by the

Constitution or the laws of the United States.

Calderon has brought a Section 1983 claim against Paul Cavalier.  In order to prove a

claim under Section 1983 against Cavalier, Calderon must prove, by a preponderance of the

evidence, each of the following four elements:

(1)     that Cavalier acted under the color of state authority;
(2)     that Calderon was deprived of one or more of her rights secured by the
        Constitution or laws of the United States;
(3)     that Cavalier committed the acts that caused Calderon to be subjected to the
        deprivation of her rights; and
(4)     that such acts as you find violated Calderon's rights were the proximate cause of
        damages sustained by her.

Calderon may not recover on a Section 1983 claim against Cavalier unless she has proven by a

preponderance of the evidence each of those elements, which I will now address in detail.

A.     FIRST ELEMENT OF A SECTION 1983 CLAIM: UNDER COLOR OF LAW

In order to prove the first element of a Section 1983 claim, Calderon must prove that

Cavalier was acting under the color of legal authority, in this case, the authority of the City of

New Haven.  Acting under color of law simply means that the activities at issue occurred while

Cavalier was performing official duties.  No one disputes that Cavalier was acting under color of

law in this case.  Therefore, the first element of Calderon's Section 1983 claim has been

established by agreement of the parties.

B.    SECOND ELEMENT OF A SECTION 1983 CLAIM: DEPRIVATION OF
      CONSTITUTIONAL RIGHT

In order to prove the second element of a Section 1983 claim, Calderon must prove that

she was deprived of a right protected by the Constitution or laws of the United States.  In this

case, Calderon alleges that Cavalier deprived her of the Fourth Amendment right to be free of

unlawful arrest.

<u>UNLAWFUL ARREST</u>

**<u>Probable Cause</u>**

The Fourth Amendment to the United States Constitution prohibits the police from

carrying out unreasonable seizures.  That Amendment provides that:

> the right of the people to be secure in their persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but
> upon probable cause, supported by oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be seized.

An arrest is considered a "seizure" within the meaning of the Fourth Amendment.  Under the

Fourth Amendment, an arrest may be made only when a police officer has probable cause to

believe that the person arrested has engaged in criminal conduct.  An arrest without probable

cause is an unreasonable seizure.

The first question for you to decide in determining whether Calderon's arrest on October

7, 2000 was lawful is whether Cavalier had probable cause to believe that Calderon had

committed the offenses of threatening or trespass.

Probable cause is not proof beyond a reasonable doubt or proof sufficient to convict. Neither, however, is it mere speculation or surmise. Probable cause exists when the facts and circumstances within the knowledge of the police officer at the time the arrest was made were sufficient to cause a police officer of reasonable prudence to believe that an offense or a crime had been committed by the person arrested. This determination is made on the basis of the totality of the circumstances viewed from the vantage point of a prudent, reasonable, cautious police officer at the time of the arrest.

Calderon has the burden of establishing by a preponderance of the evidence that she was arrested without probable cause. In order for you to determine whether Cavalier had probable cause to arrest Calderon for the charges made against her, I will instruct you about the elements of the offenses that Calderon was initially charged with committing when she was arrested.

Calderon was charged with the offenses of threatening and trespassing.

According to Connecticut General Statute §53a-62(a), a person is guilty of threatening if any one of the following elements are met:

> (1)    By physical threat, she intentionally places or attempts to place another person in fear of imminent serious physical injury; or
>
> (2)    She threatens to commit any crime of violence with the intent to terrorize another; or
>
> (3)    She threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience.

The offense of trespassing is defined by Connecticut General Statute § 53a-110(a), which provides that a person is guilty of trespassing when all of the following elements are met:

> (1)    Knowing that she is not licensed or privileged to do so;

(2)    She enters any premises;

(3)    Without intent to harm any property.

Even if all the charges against Calderon were ultimately dismissed, that does not mean that Cavalier lacked probable cause to arrest for such charges. Whether Cavalier had probable cause must be determined on the basis of the facts and circumstances facing him at the time of the arrest.

## Warrantless Arrest in the Home

Once you determine whether or not Cavalier had probable cause to arrest Calderon, you must then consider whether Cavalier entered Calderon's home without her consent to arrest her. If a police officer arrests someone inside her home, without consent to enter, the Fourth Amendment provides additional protections. To arrest someone in her home, the officer must have an arrest warrant, or alternatively, the officer must have probable cause plus a relevant exception to the warrant requirement. The only exception to the warrant requirement that potentially applies here is consent.

The parties agree that Cavalier did not have a warrant to arrest Calderon. Therefore, if Cavalier arrested Calderon in her home, the Fourth Amendment requires that he have probable cause to arrest her and consent to enter the home. However, the parties disagree about whether Calderon was arrested in her home. It is your responsibility to determine whether Calderon was arrested in her home.

The Fourth Amendment draws a firm line at the entrance of the house. If you find that Cavalier crossed the threshold of the physical structure of Calderon's home without her permission, even if only by one step, then he entered her home. If, however, you find that

Cavalier never crossed the threshold of the physical structure, then he did not enter the home.   If you find that Calderon was literally standing at the threshold of her home, such that she exposed herself to public view, speech, hearing, and touch, as if she was standing outside, then that is considered outside of the home for Fourth Amendment purposes.  However, if Cavalier crossed the threshold of the home, even by a little bit, then you must find that Calderon was inside of her home.

If you determine that Cavalier arrested Calderon outside of her home, then you do not need to consider the question of consent.  All that you need to determine is whether Cavalier had probable cause to arrest Calderon, as discussed earlier.  If he did have probable cause, then you must return a defense verdict on this claim.  If, however, you determine that Cavalier arrested Calderon inside of her home, then you must also consider the question of consent.  That is because the Fourth Amendment requires both probable cause and consent to justify a warrantless arrest in a person's home.

## Consent

If you find that Calderon gave her consent for Cavalier to enter her home then that consent would make a warrantless arrest within the home reasonable.  However, in order to be valid, consent must be freely and voluntarily given.   The test of voluntariness is whether the consent was a product of essentially free and unconstrained choice, and the question is one of fact to be determined objectively from all the surrounding circumstances.  Consent must not be the product of coercion or duress.  In deciding whether Calderon freely gave consent, you should consider whether a reasonable person would have felt free to: (1) decline the officers' request to enter the home or (2) otherwise terminate the encounter.

## Arrest Outside of Jurisdiction

Calderon also claims that her arrest was unlawful, because Cavalier arrested her in East Haven, outside the jurisdiction of the City of New Haven.  According to Connecticut General Statutes § 54-1(f), a police officer is authorized to make warrantless arrests in his own jurisdiction.  An officer may also make warrantless felony arrests outside of his jurisdiction.  However, an officer may not make a warrantless misdemeanor arrest outside of his jurisdiction, unless he is in immediate pursuit of the suspect and the arrest is otherwise lawful.

In this case, the parties agree that Cavalier arrested Calderon for misdemeanors without a warrant in East Haven, which is outside of his jurisdiction of New Haven.  Therefore, you must find that Cavalier did not have jurisdiction to arrest Calderon, unless you find that: (1) the arrest was otherwise in accordance with the requirements of the Fourth Amendment as described above and (2) Cavalier was in immediate pursuit of Calderon.  Immediate pursuit means to follow without delay.  Police officers do not need to have lights flashing or sirens on to be in immediate pursuit; indeed, no chase is required for immediate pursuit.  It suffices if the pursuit is conducted without undue delay at the earliest safe opportunity. If you find that Cavalier was in immediate pursuit of Calderon, then he had jurisdiction to arrest her.  However, if you find that Cavalier was not in immediate pursuit of Calderon, then he did not have jurisdiction to arrest her.  If Cavalier arrested Calderon without jurisdiction to do so, the arrest is unreasonable.

## Unlawful Arrest Conclusion

In summary, you must consider four issues to determine whether Calderon's arrest was lawful: (1) whether Cavalier had probable cause to arrest her; (2) whether Cavalier arrested Calderon in her home; (3) if he arrested her in her home, whether he had consent to enter the

home; and (4) whether Cavalier was in immediate pursuit of Calderon.  In order for Calderon's

warrantless arrest to be lawful, Cavalier must have had probable cause to arrest her.  If he did not

have probable cause, you must find that the arrest was unlawful.  If he did have probable cause,

then you must next determine if Cavalier arrested Calderon in her home.  If he arrested her in her

home, in additional to probable cause, Cavalier must have had consent to enter her home.  If he

arrested her outside of her home, Cavalier did not need consent to arrest Calderon.  If you find

that Cavalier arrested Calderon in her home and did not have consent to enter, the arrest is

unlawful.  Finally, even if you find that the arrest was otherwise lawful, you must also consider

the issue of jurisdiction.  Since Cavalier arrested Calderon outside of his jurisdiction, he must

have been in immediate pursuit of Calderon.  If you find that he was not in immediate pursuit of

Calderon, then the arrest is unlawful, even if you found the arrest otherwise lawful.

### C.    THIRD ELEMENT OF A SECTION 1983 CLAIM: CAUSATION

In order to prove the third element of a Section 1983 claim, Calderon must prove

Cavalier's conduct was the cause of the alleged constitutional deprivation.  Cavalier caused a

constitutional deprivation if he committed acts that violated Calderon's rights.

If you find that there was a constitutional violation, but it was not caused by Cavalier's

conduct, then Calderon has failed to establish the third element of his claim.

### D.    FOURTH ELEMENT OF A SECTION 1983 CLAIM: PROXIMATE CAUSE OF INJURY

If you find that Calderon has proven that Cavalier deprived her of a constitutional right

you should decide if Calderon has proven the fourth element of a Section 1983 claim — that the

unlawful act that deprived Calderon of her rights was the proximate cause of an injury suffered by her.

An injury is proximately caused by an act whenever it appears from the evidence in the case that the act played a substantial part in bringing about or actually causing the injury, and that injury was either a direct result or a reasonably probable consequence of the act.

This does not mean that the law recognizes only one proximate cause of an injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time either independently or together, to cause injury; and in such a case, each may be a proximate cause.

If you find that Calderon has proven by a preponderance of the evidence that Cavalier's conduct proximately caused an injury suffered by her, then Calderon has proven the fourth and final element of the Section 1983 claim.

## DAMAGES

If, after deliberating, you decide that Calderon has proven each element of her claim, then you should turn to the issue of damages for the claim you have found Calderon to have proven. The fact that I charge you on the law governing damages should not be taken as a suggestion that you should necessarily reach the question of damages. It is your function to decide the issue of liability; I am instructing you on elements of damages only so that you will have guidance should you decide that Calderon is entitled to recover damages on her claim. You should not consider the question of damages unless and until you find Cavalier liable to Calderon.

You should award damages only for those injuries caused by the conduct you find

satisfies the elements of Calderon's claims, in accordance with these instructions.

There are three different types of damages - (a) compensatory, (b) nominal, and (c) punitive. Let me now explain each type to you.

A.      COMPENSATORY DAMAGES

The first type of damages is called compensatory damages, the purpose of which is to award, as far as possible, fair and just compensation. If you decide for Calderon on the issue of liability, you must then fix the amount of damages that will reasonably and fairly compensate Calderon for any harm brought about by Cavalier's acts that give rise to liability on that claim. These damages are known as compensatory damages. Compensatory damages seek to make a plaintiff whole—that is, to compensate for the damages that she suffered. Compensatory damages may include pain and suffering.

The problem of estimating damages in a case of this sort is not easy. You are not at liberty to guess or speculate what the damages are. You must use your best judgment, remembering always that it is incumbent upon Calderon, even if you find that she is entitled to recover, to prove by a fair preponderance of the evidence the amount of the damages to which she is entitled.

Generally speaking, in order to award compensatory damages for a given injury or harm, you must find that Calderon has proven by a preponderance of the evidence that the claimed injury or harm was caused by Cavalier. Calderon may recover fair, reasonable, and just compensation for only those elements of damage she has proven were caused by the acts of Cavalier that satisfied the elements of Calderon's claim. Actual damages must not be based on speculation or sympathy. Nor may damages be based on the abstract "value" or "importance" of

a constitutional right.  Damages must be based on the evidence at trial.  On the other hand, the

law does not require Calderon to prove the amount of her losses with mathematical precision, but

only with as much definiteness and accuracy as the circumstances permit.

There is no exact standard for fixing compensatory damages.  This is a matter that is left

to the conscience, good sense, and sound judgment of the jury.  You should not act unreasonably

through bias, passion, or sympathy, but rather should exercise common sense and fix an amount

of damages, that, in accordance with the evidence and the law, will fairly compensate Calderon

for any injuries suffered by conduct that violated Section 1983 or Connecticut state law.

You must bear in mind at all times that the burden is on Calderon to prove that any

claimed element of damages was a proximate consequence of a proven wrongful act, as well as

to prove with reasonable certainty the amount of any such damages.

## CALCULATION OF FUTURE DAMAGES

If you find that Calderon is reasonably certain to suffer damages in the future from her

injuries then you should award Calderon an amount that you believe would reasonably

compensate her for such future damages.  In calculating future damages, it is the duty of the jury

to ascertain the present worth in dollars of such future damages, since the award of future

damages necessarily requires that payment be made now for a harm that will actually not be

sustained until some future date.

Under these circumstances, the result is that the plaintiff would, in effect, be reimbursed

in advance of the harm.  The law requires that the jury discount or reduce to its present worth the

amount of any anticipated future harm using the interest rate or return that the plaintiff would

reasonably expect to receive on an investment of a lump sum payment over the period of time over which the future harm would continue.

Then you should include in your verdict an award for only the present worth, the reduced amount, of the total anticipated future loss.

It is not as difficult as it may seem. For example, applying your common sense, let us say that a person offered you $100 a year for ten successive years, for payments totaling $1,000. Now, ask yourselves, what would be the reasonable amount for you to demand and for you to expect him to pay you today to equal the present value of that commitment on his part to pay you $100 a year for ten consecutive years. To compute that figure you would want to know what rate of interest you could earn on a payment today, and how many years you would be collecting that interest. A payment of $100 a year from now would be discounted by the annual interest rate. A payment of $100 two years from now would be discounted by the annual interest rate times two. And so on. You would make a determination in this way of the present value of the future harm. Although experts disagree on the subject, you should know that historic real interest rates have hovered between 1 and 3 percent.

Note that this instruction relates to any items of future damages, not to any items of damages that have already occurred.

## MITIGATION OF DAMAGES

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. The law imposes on an injured person the duty to take

advantage of reasonable opportunities he may have to prevent the aggravation of injuries, so as to reduce or minimize the loss or damage.

If you find that Cavalier is liable and that Calderon has suffered damages, Calderon may not recover for any item of damage she could have avoided through such reasonable effort. If Calderon unreasonably failed to take advantage of such an opportunity to lessen her damages, you should deny recovery for those damages which he would have avoided had he taken advantage of the opportunity.

Bear in mind that the question whether Calderon acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, that does not imply that the law requires an injured plaintiff to exert herself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided. In deciding whether to reduce Calderon's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that Calderon's conduct was not reasonable.

B.    NOMINAL DAMAGES

A second type of damages is called nominal damages. If you find that Calderon has proven a claim against Cavalier, but you find that Calderon suffered or proved no injury, you must award Calderon what are called "nominal damages."

"Nominal damages" are awarded as recognition that a plaintiff's rights have been

violated.  You would award nominal damages if you conclude that Calderon's rights were violated, without any resulting compensatory damages.  You should also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in speculation or guesswork.

You may not award both nominal and compensatory damages to Calderon; either Calderon was measurably injured, in which case you must award compensatory damages, or she was not or you cannot reasonably calculate such damage, in which case you should award nominal damages.

"Nominal damages" are a token sum, such as ten dollars.

C.     PUNITIVE DAMAGES

If you find that Calderon has proven a claim against Cavalier and you award compensatory or nominal damages to Calderon for any such claim, then you must decide whether she is entitled to an award of punitive damages.

The law permits the jury, under certain circumstances, to award an injured person punitive damages, in order to punish the wrongdoer for some extraordinarily wrongful conduct, and to serve as a warning to others not to engage in such conduct.  Punitive damages, when appropriate, are intended to protect the community and to be an expression of the jury's indignation at the misconduct.  Whether you decide to award punitive damages against Cavalier should be based on whether you find that he engaged in either:

(1)     Willful or malicious violation of Calderon's rights; or

(2)     Wanton behavior, that is, the reckless disregard of whether his actions were in violation of the Calderon's rights.

By malicious or willful, I mean that Cavalier's actions were inspired by a purpose to do Calderon harm, and that Cavalier had an intent to bring about such a result. In determining whether Cavalier's conduct was malicious or willful, you must consider what he did in light of all the circumstances, because malice and willfulness are often not susceptible of proof by direct evidence, but may be found as an inference reasonably drawn from all the facts. Calderon would be eligible for punitive damages if you find Cavalier's acts were wanton, and by that I mean a reckless disregard of the consequences that might follow from such acts. Whether you decide to award punitive damages is entirely within your discretion.

If you decide to award punitive damages, then in determining the appropriate sum of money to be awarded as punitive damages, you should consider the degree to which the defendant should be punished for wrongful conduct, and the degree to which an award of one sum or another will deter the defendant, or persons like him, from committing wrongful acts in the future.

If you determine from the evidence presented in the case that the conduct of the defendant justifies an award of punitive damages, you may award an amount of punitive damages against the defendant that all jurors agree is proper. In fixing the amount, you should consider the following questions: How offensive was the conduct? What amount is needed to prevent repetition? Does the amount have a reasonable relationship to the actual damages awarded?

The decision whether to award punitive damages is yours alone. If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

## SECTION III: INSTRUCTIONS FOR DELIBERATIONS

### THREE FORMS OF EVIDENCE

Next I want to discuss with you generally what we mean by evidence and how you should consider it.  The evidence from which you are to decide what the facts are comes in one of three forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, and regardless of who called the witness.

Second, there are the exhibits that have been received into the trial record.

Third, there are any facts to which all the lawyers have agreed or stipulated, or that I have directed you to find.

### WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence and the stipulations.

It is the witnesses's answers that are evidence.  At times, a lawyer on cross-examination may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded by the court also is not evidence and may not be considered by you in rendering your verdict.  Further, if certain testimony was received for

a limited purpose, such as for the purpose of assessing a witness's credibility, you must follow the limiting instructions I have given for that testimony.

What the lawyers say in their closing arguments, comments, objections and questions is not evidence. What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, you should rely on your memory.

Moreover, what I may have said during the trial or what I may say in these instructions is not evidence and my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion about the weight or effect of such evidence. Exhibits that have been marked for identification may not be considered by you as evidence unless and until they have been received into evidence by the court. Exhibits were received into evidence either because the parties stipulated to their admission, or when I said that an exhibit was admitted as a "full" exhibit.

In addition, materials used only to refresh a witness's recollection are not evidence unless they are admitted as full exhibits.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

<u>DIRECT & CIRCUMSTANTIAL EVIDENCE</u>

There are two types of evidence that you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence includes a witness's testimony about something the witness knows by virtue of his or her own sense -- something he or she has

seen, felt, touched or heard.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.

For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that, because there are no windows in this courtroom, you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. On the basis of your reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all of the evidence presented.

<u>INFERENCE DEFINED</u>

During the trial you may have heard the attorneys use the term "inference" and in their arguments they may have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a

disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proved by direct or circumstantial evidence. The plaintiffs may ask you to draw one set of inferences, while the defendant may ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. The mere existence of an inference against a defendant does not relieve a plaintiff of the burden of establishing her case by a preponderance of the evidence. Finally, you may not draw any inferences from the mere fact that the plaintiff filed this lawsuit.

## WITNESS CREDIBILITY - GENERAL

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did on the witness stand counts in your

determination.  How did the witness impress you?  Was he or she frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his or her demeanor -- that is, their behavior, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your every day lives.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of the witness's testimony, its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Always remember that in assessing a witness's testimony you should use your common sense, your good judgment, and your own life experiences.


## POLICE OFFICER TESTIMONY

_____Some of the testimony that you have heard has been the testimony of police officers.  The testimony of a police officer is entitled to no greater and no less weight than any other witness's testimony.  A police officer who takes the witness stand subjects his testimony to the same examination and the same tests that any other witness does.  When you consider a police officer's testimony, you should use the same tests for truthfulness that you use with other witnesses.

## IMPEACHMENT OF WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

## UNCONTRADICTED TESTIMONY

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not discredited or impeached. You may decide, because of the witness's manner and demeanor or because of the improbability of his or her testimony or for other reasons, that such testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately related what in fact occurred.

## NOTE TAKING

I am now done with the instructions on the specific claims in this case. In closing, I must add a few general instructions concerning your deliberations. You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do

not give your notes more importance than your independent recollection of the evidence.  If you did not take notes, you should rely on your own memory of the proceedings and should not be unduly influenced by the notes of other jurors.  The fact that a particular juror has taken notes entitles that juror's opinions to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during the course of deliberations.

<u>JURY BIAS</u>

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.  Please bear in mind that all litigants are equal before the law.  You should not, therefore consider any personal feelings you may have about the race, religion, national origin, sex, age, wealth, lifestyle, or other features of the parties.  Similarly, it would be wrong for you to allow feelings you might have about the nature of the claims against the defendant(s) to influence you in any way.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence presented here.  If you let sympathy or prejudice interfere with your clear thinking about the facts, there is a risk that you will not arrive at a just verdict.

In reaching your verdict, you are not to be affected by sympathy for, or prejudice against, any of the parties.  Each of the parties to this case must be regarded as equals by you.  This is the agreement you made when you were selected as jurors and it is the position that must guide your deliberations.

## CLOSING ARGUMENTS

At this point we will interrupt the instructions to hear closing arguments of counsel. I will conclude the instructions after those summations. Remember, what the lawyers say in their closing arguments is not evidence, but it is merely argument about what the evidence shows.

## [BREAK FOR CLOSING ARGUMENTS]

## LAWYERS' ARGUMENTS ARE NOT EVIDENCE

You have just heard closing arguments of counsel. I want to remind you that what the lawyers have said is not evidence, even if it seemed at times as if they were testifying. The lawyers merely presented their arguments about what the evidence has shown.

## **CONCLUSION**

Your verdict must be unanimous and represent the considered judgment of each juror.

Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror. Until a verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to

bring an end to deliberations.

Remember at all times that you are not biased, rather you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

When you return to the jury room, you should first elect one person to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

I have prepared a verdict form to assist you with your deliberations. You must complete and return the verdict form in court when you have reached your decision. You will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous. When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, date and sign the verdict form. Then inform the court security officer or clerk that you have reached a verdict. The verdict form must be used only in connection with the charge I have just given to you. The terms used in the verdict form are discussed in my instructions, and these instructions must govern your deliberations.

I want to caution you now to take your time when completing the special verdict form. As you will see when you retire to the jury room, the form consists of several questions. Each question calls for either a "yes" or "no" answer or a monetary amount. Answer each question as it appears and only those questions. As you review the form, you will see that there are instructions printed in *italics print* after each question. Please read these instructions and follow them carefully. Depending on your answer to a particular question, it may not be necessary to answer a later question. The *italicized instructions* will guide you through the verdict form. Finally, be consistent in your responses.

When you go into the jury room to begin your deliberations, you will have exhibits with

you but you will not have a transcript of the testimony.  If you want any of the testimony read to you, that can be done and will occur in open court.  I encourage you to limit the recitation of testimony.  It is not easy to locate specific portions of the testimony, and reading the testimony is a time consuming process, so please be as specific as possible if and when you decide to request a reading of portions of the testimony.

Requests that testimony be read back, as well as any other communication with the court, should be made in writing, signed by your foreperson, and given to the clerk or a marshal.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must warn you that in your communications with the court you should never reveal your numerical division at any time.

It is proper to add a final caution.

Nothing that I have said in these instructions -- and nothing that I have said or done during the trial -- has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

Thank you for your attention.