UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT                FILED

| | |
|---|---|
| MARTY CALDERON | CASE NO.: 3:02 CV 1767 (SRU) |
| VS. | 2005 NOV -9 P 12: 44 |
| | U.S. DISTRICT COURT |
| PAUL CAVALIER, ET AL. | NOVEMBER 7, 2005 |

## MOTION FOR A NEW TRIAL FOR THE PLAINTIFF NOTWITHSTANDING THE JURY VERICT ON HER CLAIM OF FALSE ARREST PURSUANT TO THE FRCP 59 ET SEQUENCE

The Plaintiff respectfully asks the court to set aside the verdict of the jury and grant the Plaintiff a Motion for a New Trial as matter of law on her claims of false arrest pursuant to the Federal Rules of Civil Procedure 59 et sequence for the foregoing reasons.

The Plaintiff claims that on November 1, 2005, after a motion by the Defendants on the Plaintiff's malicious prosecution claims and municipal liability claims and claims for defamation, the court awarded a directed verdict without trial to the Defendants over the Plaintiff's objections.

On November 1, 2005 the Plaintiff's remaining claim of false arrest was submitted to the jury for judgment, after a trial on October 31, 2005 and November 1, 2005 of the factual disputes and the Jury returned a verdict on November 1, 2005 that the Defendant's did not falsely arrest the Plaintiff.

On November 1, 2005, the Honorable Judge Stefan R. Underhill held a Jury Instruction conference on the record with Susan Catucci, the court reporter, the Plaintiff, Marty Calderon, and the Defendant's counsel, Attorney Michael Wolak.

1

At the jury instruction conference on November 1, 2005, Judge Stefan R. Underhill gave the Plaintiff and the Defense his version of his jury instructions which was a total of 29 pages. No where in Judge Stefan R. Underhill's jury instructions did the Judge instruct the jury of a)that exigent circumstances must exist to arrest the Plaintiff in her home without a warrant and, b) the element and necessity that an alleged misdemeanor crime not committed in an officer's presence does not justify a warrantless arrest in the Plaintiff's home.

On November 1, 2005, at the jury instruction instruction conference the Plaintiff objected to Judge R. Underhill's jury instructions not containing the instructions regarding exigent circumstances to make an arrest and also not containing the instructions of the necessity that the alleged crime must be committed in an officer's presence in order to make a warrantless arrest of the Plaintiff in her home. After the Plaintiff stated her objections, Judge Stefan R. Underhill, overuled the Plaintiff's objections. The Plaintiff claims she preserved her jury instructions objections for the record at the jury instruction conference.

Prior to the trial of the disputed facts on October 31, 2005 and November 1, 2005, the Plaintiff submitted to the court her proposed Jury Instructions in the Pre-Trial Court Memorandum, again on September 12, 2005, again on October 14, 2005, and the Plaintiff submitted a Memorandum of Law in Support of all the Plaintiff's Prior Proposed Jury Instructions for the Trial Date of October 31, 2005.

In the Plaintiff's October 12, 2005 Proposed Jury Instructions the Plaintiff explained the following to the court. *"Whether exigent circumstances existed to justify a warrantless arrest is a question for the jury, so long as, given the evidence, there is room*

*for a difference of opinion. See <u>O'Brien v. Grand Rapids</u>, 23 F.3d. 990, 998 (6th Circuit 1994).*

*In <u>Dubner v. San Francisco</u>, 266 F.3d. 959, 965 (9th Circuit 2001), the Ninth Circuit ruled that although the Plaintiff bears the ultimate burden of proof to show an unconstitutional arrest, "she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The Plaintiff still has the ultimate burden of proof, but the burden of production falls on the Defendant."* (Excerpts from the Plaintiff's 10/12/05 Jury Instructions.)

On October 14, 2005, the Plaintiff claimed in her Proposed Jury Instructions the following: "**<u>Warrantless Seizure in Home-Exigent Circumstances-Fourth Amendment</u>**

*The Plaintiff asserts that the seizure of the Plaintiff in her home by the Defendant police officer without a warrant issued by a neutral magistrate violated her right to be free from an unreasonable seizure, a right protected by the Fourth Amendment to the United States Constitution. Normally, a police officer may not seize a citizen in their home without first obtaining a warrant from a magistrate or judge. The Defendant officer, however, contends that, although he did not have a warrant the seizure was justified by probable cause. Under the law, exigent circumstances can justify a warrantless entry by the police into the home when:*

1. *There is probable cause to believe that a suspected felon is likely to flee from the home before the police officer can obtain a warrant; or*
2. *The police officer is in hot pursuit of a fleeing felon; or*

3

*3. There is probable cause to believe there is an imminent danger that evidence of crime will be destroyed; or*

*4. There is probable cause to believe there is a risk of danger to the safety of the police or to other persons inside or outside the dwelling.*

*Police officers, however, may not justify a warrantless search with exigent circumstances of their own making.*

*You will determine, however, may not justify a warrantless seizure of a person in their home without exigent circumstances of their own making.*

*You will determine, by answering the questions I will give you, the circumstances that confronted officer Paul Cavalier at the time of his warrantless seizure of the Plaintiff in her home. Based on your determination of these facts, I will determine as a matter of law whether there were exigent circumstances justifying the warrantless seizure of the Plaintiff in her home. Attributed: Drafted by the authors based upon analysis in <u>Minnesota v. Olson</u>, 495 U.S. 91 (1990) and <u>Tamez v. San Marcos</u>, 119 F.3d. 1085 (5th Cir. 1997). See also <u>Hancock v. Dodson</u>, 958 F.3d. 1367 (6th Cir. 1992); <u>Jones v. Lewis</u>, 874 F.2d. 1125 (6th Cir. 1989). (Excerpts from the Plaintiff's Proposed Jury Instructions dated 10/14/05.)*

On October 25, 2005, the Plaintiff submitted an additional Memorandum of Law to the court to support her prior Jury Instruction Proposals. The following is excerpts from the Plaintiff's Memorandum of Law in Support of her Proposed Jury Instructions.

*"The Plaintiff claims that for the Defendants to establish that they had probable cause to arrest the Plaintiff based on Officer Paul Cavalier's Police Report, the Defendants have to offer evidence that Officer Paul Cavalier was actually given a*

*complaint by Christopher Santos, Linda Santos, and Iris Santos. The Plaintiff claims if those three witnesses do not take the stand to testify, the Defendants have not sustained their burden of proof for the defense that they indeed had probable cause to make an arrest of the Plaintiff on October 7, 2000.*

*The Plaintiff also claims that even if Christopher Santos, Iris Santos, and Linda Santos were to take the stand and testify, the Defendants still would have to prove under the laws of the U.S. Constitution Fourth Amendment that a)the Defendants had probable cause to arrest the Plaintiff on October 7, 2000, and b)there were exigent circumstances for the Defendants to make an arrest of the Plaintiff at the Plaintiff's home in East Haven, CT, outside of their jurisdiction of New Haven, CT. The Plaintiff claims that the Defendants cannot sustain their burden of proof of these two elements because a)their police report of the October 7, 2000 incident is not factual or credible and, b)there were no exigent circumstances to justify a Fourth Amendment violation of seizure in a citizen's home without a warrant.*

*The Plaintiff claims that the Defense cannot come into court and try to defend an alleged incident that they claimed occurred not in their presence without any witness testimony. The Plaintiff claims that the case law is clear that an officer cannot make an arrest in a citizen's home without a warrant for an alleged crime that he did not witness.*

*The Plaintiff claims that in her criminal case of the matter, there never was a probable cause hearing at her criminal proceedings of the matter, and the Plaintiff has a right for the jury to decide a)if probable cause existed at the time Officer Paul Cavalier arrested the Plaintiff on October 7, 2000, and b)if there were exigent circumstances to arrest the Plaintiff in her home without a warrant in violation of the U.S. Constitution*

*Fourth Amendment.*

*The Plaintiff also claims that it was not objectively reasonable for the Defendants to arrest the Plaintiff in her own home on October 7, 2000 without a warrant based on an alleged complaint by allegedly three witnesses. If all Officer Paul Cavalier is going to do is take the stand and testify that he was told by an alleged three witnesses that the Plaintiff threatened Christopher Santos on October 6, 2000, the Plaintiff claims that even if Officer Paul Cavalier is telling the truth which the Plaintiff claims that he is not being totally truthful, he still must sustain his burden of proving that their existed exigent circumstances at approximately 4:30-4:50 a.m. on the morning of October 7, 2000 as to justify arresting the Plaintiff in her home without a warrant.*

*Courts apply the reasonable person standard to determine whether a seizure under the Fourth Amendment has occurred. See, <u>Sampson v. The City of Schenectady</u>, 160 F.Supp. 2d. 336, (2001), (Exhibit #1).*

*The Plaintiff claims that making certain that the officer has seen the crime committed, greatly reduces the chance of mistaken arrest. See <u>Gramenos</u>, 797 F.2d. At 441, <u>People v. Dixon</u>, 222 N.W. 2d. 749, 751 (Mich. 1974). According to <u>Penn. v. Commonwealth</u>, 412 S.E.2d. 189, 191 (Va. Ct. App. 1991), the court claims that the present day importance of the presence requirement to be that a police officer may not utilize information received from third persons as a basis for a warrantless misdemeanor arrest. The purpose behind the presence requirement is to prevent officers from making warrantless misdemeanor arrests based on information received from third parties. See, <u>U.S. v. Watson</u>, 423 U.S. 411, 426-427, (1976)(Powell, J., concurring).*

*According to <u>Trupiano v. U.S.</u>, 334 U.S. 699, 705(1948), the dangers of unlimited*

*and unreasonable arrests are not present where a felony plainly occurs before the eyes of an officer of law.*

*The court held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. See <u>Payton v. New York</u>, 445 U.S. 573, 576 (1975) and <u>Collidge v. New Hampshire</u>, 403 U.S. 443, 4747-475 (1971) (a search and seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show the presence of exigent circumstances). Also see, <u>Steagald v. U.S.</u>, 451 U.S. 204, 211-212 (1981); <u>McDonald v. U.S.</u>, 335 U.S. 451, 456 (1948); <u>Boyd v. U.S.</u>, 116 U.S. 616, 630 (1886).*

*In <u>Welsh v. Wisconsin</u>, 466 U.S. 740 (1984), the court held that a warrantless arrest of petitioner in his home violated U.S. Constitution Fourth Amendment because the state, although demonstrating probable cause to arrest, had not established the existence of exigent circumstances. The Court also noted that application of the exigent-circumstances exception in the context of a home entry was rarely appropriate when only a minor offense had been committed. Quoting from <u>Welsh</u>,*

*"To prevail in this case, the state must prove the co-existence of probable cause and exigent circumstances, justifying the officer's conduct at the defendant's residence. We hold that there was ample evidence supporting the trial court's ruling that the officer's entry was justified on the basis of both probable cause and exigent circumstances. Entry to effect a warrantless arrest in a residence is subject to the limitations imposed by both the United States and the Wisconsin Constitutions."*

*See <u>Payton v. New York</u>, 445 U.S. 573 (1980), warrantless arrests only allowed in*

*felonies. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. Payton, supra, at 586. See also, State v. Guertin, 190 Conn. 440, 453, (1983),(The exigent circumstances exception is narrowly drawn to cover cases of real and not contrived circumstances); Commonwealth v. Forde, 367 Mass. 798, 806, (1975); Commonwealth v. Derosia, 402 Mass. 284, (1988); Commonwealth v. Huffman; 385 Mass. 122, 124, 91982), Commonwealth v. Acosta; 416 Mass. 279, 281-282 (1993). See also Connecticut law, C.G.S. Section 54-1f. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. See Commonwealth v. Midi, 46 Mass. App. Ct. 591, 594, 708 N.E.2d. 12491999). See also, State v. McAteer, 340 S.C. 644, 646-650, 532 S.E.2d. 865, 866-868 (2000). Off-Duty Officer had no Common law or Statutory Right to Make Warrantless Arrest Outside of Jurisdiction for Misdemeanor, even if misdemeanor occurred.*

*The Plaintiff claims that the Defendants cannot sustain their burden of proof for their defense of the Plaintiff's case."* (Excerpts of the Plaintiff's Memorandum of Law in Support of her Proposed Jury Instructions dated October 25, 2005.)

Therefore, the Plaintiff claims the court was on full notice of her Proposed Jury Instructions and the legal reasons she submitted them to the court based on the facts of this case.

The Plaintiff additionally claims in this motion for a Judgment Notwithstanding the Verdict, that according to Payton v. New York, 445 U.S. 573, (1980), a full custodial arrest is subject to quientessential seizure rules according to the Fourth Amendment of

the U.S. Constitution.

According to 42 U.S.C. Section 1983 and <u>Gramenos v. Jewell, Inc.</u>, 797 F.2d. 432, 435 (7th Cir. 1986), if the arrest was unconstitutionally unreasonable then the police are liable. An arrest can be held unreasonable pursuant to the U.S. Constition Fourth Amendment and Connecticut state law through the U.S. Constition 14th Amendment.

When an arrest takes place in a house, the police officers assessment of probable cause ordinarily is insufficient because the officers must get a warrant unless the circumstances are exigent. See <u>Steagold v. U.S.</u>, 451 U.S. 204, (1981), <u>Payton v. New York</u>, 445 U.S. 573, (1980).

When an arrest or any other seizure takes place in a private place at night, the police ordinarily must meet an elevated standard and perhaps establish a special need for haste. See Federal Rules of Criminal Procedure 41c, <u>Gooding v. U.S.</u>, 416 U.S. 430, 455-458; <u>Jones v. U.S.</u>, 357 U.S. 493, (1958).

Common law contains one more limit, an official may make a custodial arrest only for a misdemeanor if the crime was committed in the officer's presence. See Wayne R. Lavavre, Arrest, The Decision to Take a Suspect Into Custody, 17-30 (1965).

In Connecticut, the controlling state law is Connecticut General Statute Section 54-1(f)(c) (2004).

*§ 54-1f. (Formerly Sec. 6-49). Arrest without warrant. Pursuit outside precincts.*

*(a) For purposes of this section, the respective precinct or jurisdiction of a state marshal or judicial marshal shall be wherever such marshal is required to perform duties. Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any*

9

*offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection.*

*(b) Members of the Division of State Police within the Department of Public Safety or of any local police department or any chief inspector or inspector in the Division of Criminal Justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.*

*(c) Members of any local police department or the Office of State Capitol Police and constables and state marshals who are certified under the provisions of sections 7-294a to 7-294e, inclusive, and who perform criminal law enforcement duties, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed.*

*(d) Any person arrested pursuant to this section shall be presented with reasonable promptness before proper authority.*

According to C.G.S. Section 54-1f (c), the official must be in immediate pursuit of the suspect from one jurisdiction to another. This is applicable when a police officer stops a suspect in one jurisdiction like for instance in a traffic stop and then tries to pursue him to another jurisdiction.

Conn. Gen. Stat. § 54-1f permitted a municipal police officer to pursue and arrest

someone outside the municipality if the officer could have arrested that person within the municipality for an "offense," as authorized by subsection (a), or for a "felony," as authorized by subsection (b); where an officer pursued a motorist for a traffic infraction, the stop and arrest for DUI in an other town was illegal and could not support a license suspension. Lawlor v. Goldberg, 1992 Conn. Super. LEXIS 3627 (Conn. Super. Ct. Dec. 21 1992).

There was probable cause for the arrest as the facts and circumstances within the knowledge of the observing officer were sufficient to warrant the belief that a felony had been committed; the officer saw defendant loitering and counting cash near an abandoned building in a drug neighborhood, saw defendant walk with another person to a secluded area in an apparent effort to cloak the subsequent transaction, and saw the driver hand defendant some money and defendant hand her several small items. State v. Jeffreys, 78 Conn. App. 659, 828 A.2d 659, 2003 Conn. App. LEXIS 353 (2003), appeal denied by 266 Conn. 913, 833 A.2d 465, 2003 Conn. LEXIS 417 (2003).

Constable's arrest of an individual outside his jurisdiction, without a warrant, and without evidence that the arrested individual had committed any offense, as provided for in former Conn. Gen. Stat/ § 6-49 (now Conn. Gen. Stat. § 54-1f), entitled the arrested individual to recovery of damages. See, Zanks v. Fluckiger, 22 Conn. Supp. 311, 171 A.2d 86, 1961 Conn. Super. LEXIS 149 (Conn. Super. Ct. 1961).

In another case, the appellate court held that the trial court improperly held that a defendant's arrest for the misdemeanor offense of threatening based on the speedy information of others was proper pursuant to Conn. Gen. Stat. Ann. § 54-1f(a); the warrantless arrest of the defendant violated U.S. Const. Amendment IV because he was

11

standing in the doorway of his porch, an area in which he had an expectation of privacy at the time of his arrest, and as a result, his motion to suppress evidence seized on his person should have been granted. See, State v. Santiago, 26 Conn. App. 481, 602 A.2d 40, 1992 Conn. App. LEXIS 35 (1992), reversed by 224 Conn. 494, 619 A.2d 1132, 1993 Conn. LEXIS 22 (1993).

An example of a legal warrantless arrest based on a police officer's observation is the following: Police officer's warrantless arrest of defendant and the subsequent search of defendant and his vehicle were permissible pursuant to Conn. Gen. Stat. § 54-1f(b) because police officer's observation of defendant handing small plastic bags to a number of individuals in exchange for money while with a known drug dealer in an area known for narcotics activity provided him with reasonable grounds to believe defendant had committed or was committing a felony; the evidence obtained during the search was improperly suppressed. See, State v. Hedge, 59 Conn. App. 272, 756 A.2d 319, 2000 Conn. App. LEXIS 382 (2000).

In interpreting the term "immediate pursuit," as stated in C.G.S. Section 54-1f(c) the trial court applied its ordinary meaning of "to follow without delay," see State v. Kowal, 31 Conn. App. 669, 673 (1993). However, in the instant case the Defendants have clearly stated on the record on October 31, 2005 and November 1, 2005 through testimony of the Plaintiff, Marty Calderon, the Defendant, Officer Paul Cavalier, and the Defendant's witness, Officer Brian Kelly of the East Haven Police Department that the Plaintiff, Marty Calderon was in her housecoat when the Defendant Officer Paul Cavalier and East Haven Police Department Officer Brian Kelly came to her door sometime after 4:16 am on October 7, 2000 in East Haven, Connecticut which is outside the jurisdiction

12

of the Defendants jurisdiction of New Haven, Connecticut and almost five hours after the Defendant Officer Paul Cavalier allegedly claimed he had taken a complaint from three witnesses in his jurisdiction of New Haven, CT at 11:30 p.m. on October 6, 2000.

Officer Paul Cavalier claimed in his testimony October 31, 2005 and November 1, 2005 that he claimed he was arresting the Plaintiff based on a complaint to him at about 11:30 p.m. On October 6, 2000 by allegedly three witnesses, Christopher Santos, the Plaintiff's ex-husband, Iris Santos, and Linda Santos. Officer Paul Cavalier has testified in his testimony October 31, 2005 and November 1, 2005 that he never witnessed the Plaintiff commit any of the acts alleged in his police report submitted into evidence for the jury dated October 6-7, 2000.

The Plaintiff claims that as a matter of law, the jury's decision was wrong and not legally correct in that after trial it could be found as a matter of law that a)the Defendants arrested the Plaintiff about 4:30 am on October 7, 2000 without a warrant in the Plaintiff's home; b)the Defendant's arrest of the Plaintiff was based on a complaint given to the Defendant Officer Paul Cavalier by allegedly three witnesses on October 6, 2000 and the alleged crime claimed by the witnesses was not witnessed by the Defendant Officer Paul Cavalier; and c) the Plaintiff was in her home at 43 Prospect Pl. Ext., East Haven, CT and in her housecoat when the Defendant Officer Paul Cavalier and East Haven Police Officer Brian Kelly came into the Plaintiff's house to make the arrest of the Plaintiff.

Additionally, East Haven Police Officer Brian Kelly testified on November 1, 2005, that the Plaintiff, Marty Calderon was not free to leave when Officer Paul Cavalier was arresting her in her home.

There was conflicting testimony by Officer Paul Cavalier in that he claimed that

13

he did not yell at the Plaintiff to open her front door of her house to let him in. The Plaintiff testified on October 31, 2005 that Officer Paul Cavalier yelled at the Plaintiff to open her door or he would break and knock it down. Despite the facts of this testimony, it really does not matter for the legal element of false arrest in the town of East Haven, Connecticut because the Plaintiff claims that as a matter of law, unless the Defendant, Officer Paul Cavalier witnessed the Plaintiff commit the alleged crimes in his presence or if he was in immediate pursuit of the Plaintiff after he stopped her in his jurisdiction in New Haven, Connecticut, then the Defendant could not have made a legal arrest of the Plaintiff in her home in East Haven, Connecticut because their was no immediate pursuit of the Plaintiff from the alleged time of the alleged and accused crimes which according to Officer Paul Cavalier had to have occurred prior to his coming out to take the complaint from his witnesses at 11:30 pm on October 6, 2000. In that the Defendant, Officer Paul Cavalier never witnessed the Plaintiff commit any crimes as alleged in his police report in his presence, then how could it be inferred that he was in immediate pursuit of the Plaintiff from one jurisdiction to another. The Plaintiff claims that this type of warrantless arrest outside of the jurisdiction of the Defendant's New Haven Police Department is illegal and has all the elements of a false arrest and therefore the Plaintiff claims that a judgment should be for the Plaintiff as a matter of law in her claims of false arrest.

According, State v. Lamme, 579 A.2d. 484, 216 Conn. 172 (1990), no person shall be arrested but in cases clearly warranted by law. The Plaintiff claims that as a matter of law even when making routine felony arrests, police are prohibited from making a warrantless and nonconsensual entry into a suspect's home. See State v. Gallagher, 465

14

A.2d. 323 (1983).

Also see, Zanks v. Fluckiger, 22 Conn. Supp. 311, 314, (1961), a constable has no right to arrest "Zanks" in Rockville, CT ouside his precincts, without a warrant and such an arrest is illegal and grounds for an action of false imprisoment.

The Plaintiff claims that going to the extreme of a possible situation that is also inapplicable her, is that C.G.S. Section 54-1f(a) permits a constable to arrest without a warrant **in his precincts**, when a person is taken in the act or on the speedy information of others, see State v. Delorme, 197 A.2d. 543, 2 Conn. Ct. 231 (1983) but this does not apply to arrest ouside of the Defendant Officer's jurisdiction and **past acts not in the process of commission at the time of apprehension, also see Price v. Tehan, 79 A. 68, 84 Conn. 164 (1911). See also, Thamel v. Town of East Hartford, 373 F.Supp. 455 (1974).**

Under New York Law, the court stated a warrantless arrest is presumtively unlawful. The Plaintiff need not prove either malicious or want of probable cause, rather, the Defendant has the burden of proving that the arrest was authorized under New York Criminal Procedure Law Sec. 140.10 (McKinney 1981).

Also, see Nicholas L. Lopuszynski, Spring of 2004, "*Father Constitution. Tell Police to Stay on Their Own Side: Can Extra Judicial Arrests Made in Direct Violation of State Law Ever Cross the Fourth Amendment Reasonableness Line*, 53 DePaul Law Review, 1347. "The court held at warrantless arrest executed outside of an arresting officer's jurisdiction is analgous to a warrantless arrest without probable cause.

See **Ross v. Ness**, *905 F.2d 1349, 1354; 1990 U.S. App. LEXIS 8791*, the court expressly held that arrests made outside of the arresting jurisdiction (Cherokee

Reservation) violates the U.S. Constitution Fourth Amendment and is actionable pursuant to 42 U.S.C. Section 1983.

It is for the aforementioned mentioned reasons that the Plaintiff respectfully requests the court to grant the Plaintiff a Motion for a New Trial on her false arrest claim, as a matter of law, notwithstanding the jury verdict on November 1, 2005, that the Defendants did not falsely arrest the Plaintiff.

**HEARING REQUESTED**

THE PLAINTIFF
BY: *Marty Calderon* (signature)

Marty Calderon, Pro Se
P.O. Box 503
Norwalk, CT  06852

## CERTIFICATION

I certify that the Plaintiff has mailed her FRCP 59 Motion for a New Trial, on November 7, 2005 by U.S. mail to:

> Michael A. Wolak, III
> Assistant Corporation Counsel
> 165 Church St., 4th floor
> New Haven, CT  06510
> Federal Bar # ct12681
> Telephone: (203) 946-7970 or 7958
> Fax # (203) 946-7942
> E-mail: mwolak@newhavenct.net
> Their Attorney

THE PLAINTIFF

BY: *Marty Calderon* (signature)

Marty Calderon, Pro Se
P.O. Box 503
Norwalk, CT  06852

ORDER

The aforementioned Plaintiff's FRCP 59 Motion for a New Trial is hereby granted.

---------------

Judge Stefan R. Undherhill