UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MARTY CALDERON** | : | **CASE NO.: 3:02CV1767 (SRU)** |
| **VS.** | : | |
| **PAUL CAVALIER, ET AL.** | : | **NOVEMBER 28, 2005** |

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL**

**I.    RELEVANT PROCEDURAL BACKGROUND**

Plaintiff brought suit against the defendants alleging various violations of the United States Constitution, the State of Connecticut Constitution, federal law and Connecticut statutory and common law. Specifically, she made claims of false arrest, malicious prosecution, discrimination based on race, conspiracy involving the deprivation of equal protection of the law, a "Monell" claim, defamation, interference with property rights and interference with contacts. Plaintiff further claimed that she was injured as a result of the actions of the defendants.

Trial of this matter commenced before a jury on October 31, 2005. Defendants, at the close of plaintiff's case, moved pursuant to Rule 50(a) of the Rules of Civil Procedure for a Judgment as a Matter of Law as to all of plaintiff's claims. The trial judge denied this motion as to the false arrest claim, but granted it as to all of the other claims brought by the plaintiff. On November 1, 2005, the plaintiff's false arrest claim was submitted to the jury, and on that same date they rendered a verdict in favor of the

defendant Paul Cavalier. Judgment was entered in favor of all of the defendants on November 3, 2005.

Plaintiff, on November 9, 2005, filed with the court two motions for new trial, both dated November 7, 2005. Defendants oppose these motions.

## II.     MOTION FOR NEW TRIAL STANDARD

"Rule 59(a) of the Federal Rules of Civil Procedure provides: 'A new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.'" DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998). "Thus, a motion for a new trial may be based on, inter alia, an argument that 'the trial was not fair to the party moving,' or on 'questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" Charts v. Nationwide Mutual Insurance Co., _____ F.Supp.2d _____, 2005 WL 2789319, 11, (D.Conn.) (Droney, J., October 25, 2005), quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189 (1940). "A motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" (Citations omitted.) Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992).

"[A] new trial motion maybe granted even if there is substantial evidence to support the verdict," and "[t]he trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." (Citations omitted.)

Bevevino v. Saydjari, 574 F.2d 676, 683-84 (2d Cir. 1978).  Whether or not to grant a new trial under this rule is "committed to the sound discretion of the district court." Sequa Corp. v. G.B.J. Corp., 156 F.3d 136, 143 (2d Cir. 1998).  "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'"  DLC Management Corp. v. Town of Hyde Park, supra, 134.  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bit at the apple.'"  Sequa Corp. v. G.B.J. Corp., supra, 144.

### III.   THE JURY'S VERDICT ON PLAINTIFF'S FALSE ARREST CLAIM WAS NOT CONTRARY TO LAW OR EVIDENCE

**A.**

Contrary to plaintiff's claim, the jury in this case heard evidence from which it could justifiably conclude, as it did, that she was not falsely arrested.  The jury's decision was also legally correct.  On Friday, October 6, 2000, at approximately 11:20 p.m., defendant Paul Cavalier, a New Haven police officer, was dispatched to 125 Oakley Street, in New Haven, on a threatening complaint.  Upon his arrival he was informed by the complainant, Christopher Santos, the plaintiff's former husband, that the plaintiff had been at his home a short time before, and had threatened him over their daughter, Linda Santos.  Linda Santos told Officer Cavalier that she had observed this

incident. Officer Cavalier was also informed that the plaintiff lived at 43 Prospect Place Extension in East Haven.

Due to the nature of the relationship between Mr. Santos and the plaintiff, this threatening incident had to be classified by Officer Cavalier as a Family Violence Matter. Not only did a Victim Account Report have to be completed, but also a Family Violence Offense Report. Defendant Cavalier, in the early morning hours of Saturday, October 7, 2000, contacted his supervisor, Sgt. Kevin Emery, to obtain permission to travel into East Haven to locate and arrest the plaintiff, and this permission was given. Defendant Cavalier, following procedure, notified the East Haven Police Department dispatcher with a request that he needed an East Haven police officer to accompany him while he went to plaintiff's residence. An East Haven police officer was needed in this situation to guide this defendant to plaintiff's residence and to be present if a circumstance developed that would necessitate an East Haven arrest being made because of a crime being committed in East Haven.

When defendant Cavalier was informed that an East Haven officer was available to guide and escort him to the plaintiff's residence, he went to the New Haven/East Haven border to meet him and to brief him as to what was taking place. At approximately 4:30 a.m. on Saturday, October 7, 2000, the two officers arrived at plaintiff's residence in East Haven. Defendant Cavalier either knocked on the front door or rang the door bell, and after a period of time the plaintiff came to a front window. After a brief discussion concerning why he was there, defendant Cavalier requested that

the plaintiff come to the front door. Defendant Cavalier made this request for officer safety reasons. Plaintiff, came to the front door, opened it, and stood in the doorway. After some further brief discussion, defendant Cavalier told her that she was under arrest. Plaintiff at this point requested that she be allowed to change into her clothes which defendant Cavalier permitted. Plaintiff spent the next ten to twenty minutes changing into her clothes and being involved in a telephone conversation. She then came back to the open front door and exited her residence. Defendant Cavalier placed her into handcuffs outside of her residence. Plaintiff was then transported by defendant Cavalier to a prisoner conveyance van where she was then transported to One Union Avenue in New Haven.

**B.**

Section 54-1f(a) of the Connecticut General Statutes "authorities police officers to arrest an individual without a warrant 'for any offence in their jurisdiction, when the person is taken or apprehended in the act or on the or on the speedy information of others. . . .'" (Citations omitted.) State v. Santiago, 224 Conn. 494, 498, 619 A.2d 113 (1993). The term speedy information, as utilized in Section 54-1f(a), is that information that an officer receives promptly, after the commission of a crime, which the officer has reasonable ground to accept as time, that the person to be arrested was involved in the crime. State v. Carroll, 131 Conn. 224, 230, 38 A.2d 798 (1944). While an arrest warrant is preferable, this "statute effectuates that result by requiring a warrant except when the offender is apprehended in the act or upon speedy information, in which case

ordinarily there would be no opportunity to obtain a warrant." Sims v. Smith, 115 Conn. 279, 283, 161 A. 239 (1932). Section 54-1f(a) "allows the officer to rely upon all the information which has come to his attention from whatever source derived, subject to the limitation from whatever source derived, subject to the limitation that it must be 'speedy' where only a misdemeanor is involved." State v. Anonymous (1981-1), 37 Conn. Supp. 755, 759, 436 A.2d 789 (1981). The determination as to whether the arresting officer has the statutorily required reasonable grounds to believe that he or she has received speedy information of the commission of an offense in order to make an arrest without a warrant is usually summarized as probable cause to arrest. (Citations omitted.) Beinhorn v. Saraceno, 23 Conn. App. 487, 492, 582 A.2d 208 (1990).

"Probable cause to arrest exists if (1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed the crime. Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a [crime] has been committed. (Citations omitted.) State v. Trine, 236 Conn. 216, 236-37, 673 A.2d 1098 (1996). The test for determining probable cause is objective, and requires more than mere suspicion. Id., 237. "[T]he line between were suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances," and

the "existence of probable cause does not turn on whether the [person arrested] could have been convicted on the same available evidence. (Internal quotation marks omitted; Citations omitted.) Id." In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, reh. denied, 338 U.S. 839, 70 S.Ct 31 (1949). Based upon what defendant Cavalier was told by Christopher Santos, which was corroborated by Linda Santos, he had probable cause to arrest the plaintiff on speedy information.

### C.

Officer Cavalier, pursuant to Section 54-if(c) of the Connecticut General Statutes, was authorized to go into East Haven from New Haven to arrest the plaintiff for a misdemeanor if he was in "immediate pursuit." Immediate pursuant does not mean hot pursuit, does not require an attempted avoidance of arrest by the arrestee, or even the knowledge by the arrestee that he or she is being pursued. (Citation omitted.) State v. McCollough, 88 Conn. app. 110, 123, 868 A.2d 757 (2005). "Police officers need not have lights flashing or sirens on to be in immediate pursuit; it suffices if the pursuit is conducted without undue delay and is accomplished at the earliest safe opportunity. No chase is required for immediate pursuit." Id., at 123 and 124.

In the instance matter, defendant Cavalier acted without "undue delay" in securing the arrest of the plaintiff. Evidence before the jury showed that he promptly

sought and received permission from his supervisor to go into East Haven, that as per procedures, he notified the East Haven Police Department of his intention and of the need for an East Haven police officer to accompany him, and that he immediately went to East Haven when he was informed that an East Haven police officer was available to go with him to plaintiff's residence.  A delay in making an arrest, not attributable to actions or inactions of the arresting officer, will not make an arrest nonconforming with the statutory provisions of Section 54-1f.  State v. Jarvis, 6 Conn. Cir. Ct. 55, 58, 264 A.2d 370 (1969).

### D.

Generally speaking, the Fourth Amendment to the United States Constitution prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine arrest.  Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371 (1980).  "Even where there is probable cause to arrest a suspect on the speedy information of others, however, the fourth amendment prohibits the police from making a warrantless entry into a suspect's home in order to make a routine misdemeanor arrest."  (Internal quotation marks omitted; (citation omitted.)  State v. Santiago, supra, 498-499.  However, the Payton case "does not hold or suggest that the home is a sanctuary from reasonable police investigation."  United States v. Gori, 230 F.3d 44, 51 (2d Cir. 2000).  "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection."  (Citation omitted.)  United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406 (1976).  "[W]hen

police officers knock on the door of a dwelling and an occupant voluntarily opens the door, the resulting encounter, in the absence of coercive police conduct, generally is deemed to be consensual." State v. Mann, 271 Conn. 300, 309, 857 A.2d 329 (2004).

The United States Supreme Court in United States v. Santana, supra, held that an individual, standing in the doorway of home was in a public place, and therefore could be arrested, upon probable cause, without a warrant. At 427 U.S. 42. The Supreme Court found that the person arrested "was not in an area where she had any expectation of privacy," and that this person "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." Id. In reaching its decision, the court relied on its decision in United States v. Watson, 423 U.S. 411, 96 S.Ct. 860 (1976), that "held that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment" Id. Thus, when the police in Santana sought to arrest the individual, with probable cause to so, who was standing in the doorway of her home, "they merely intended to perform a function which [the Supreme Court had] approved in Watson." Id.

The Connecticut Supreme Court in State v. Santiago, supra, a case that has some factual similarities to the instant case, relying on the United States Supreme Court decision in United States v. Santana, supra, found that the arrest of an individual in his doorway, without a warrant, after he opened his door in response to an officer's knock, was constitutionally permissible. The police officer in Santiago responded to the

housing complex where the arrestee resided after he received a report that an individual had allegedly threatened a neighbor with a handgun.  The officer, after interviewing the neighbor and another person, went to this individual's apartment and knocked on the door.  The accused individual opened the door and stood in the doorway, at which time a discussion took place between him and the police officer.  The officer then asked the individual to remain where he was standing while the officer went to consult with his supervisor.  When the police officer returned to the doorway, the door was still open and the arrestee was still standing in the doorway.  The police officer arrested the individual for threatening.  The Santiago court, in reaching its decision, found that "[u]nder Santana the relevant inquiry is whether the [arrestee], while in the doorway, exposed himself to the public.  If he was exposed to the public despite the intervening porch, he was not in area where he had a reasonable expectation of privacy.  If the [arrestee] did not have a reasonable expectation if privacy, he is not protected by the guarantees of the fourth amendment."  (Citations omitted.)   At 224 Conn. 502.  See also State v. LaBanca, 39 Conn. L.Rptr. 583, 2005 WL 1970130 (Conn. Super.)  (Robinson, J. March 9, 2005).

In the instant matter there was evidence that jury could have found that the plaintiff voluntarily opened her door upon the request of Officer Cavalier, and that she was told that she was under arrest while still standing in her doorway.  Additionally, the plaintiff requested that she be allowed to change her clothes which she was permitted to do, and after a lapse of some time she voluntarily returned to the front door, at which

time she went with Officer Cavalier outside where she was handcuffed.  Even if <u>United States v. Payton</u>, supra, was considered to be the controlling authority in this case, "there is nothing in <u>Payton</u> that prohibits a person from surrendering to police at his [or her] doorway."  <u>United States v. Berkowitz</u>, 927 F.2d 1376, 1386 (7th Cir. 1991).

## IV. **CONCLUSION**:

For the above stated reasons, plaintiff's motion for new trial should be denied.

                                            THE DEFENDANTS, PAUL CAVALIER
                                            AND THE CITY OF NEW HAVEN

/s/:_____
      Michael A. Wolak, III
      Assistant Corporation Counsel
      City of New Haven
      165 Church Street
      New Haven, CT  06510
      Tel. #:  (203) 946-7970 or 7958
      Fax #:  (203) 946-7942
      E-mail: mwolak@newhavenct.net
      Fed. Bar #ct12681
      Their Attorney

## **CERTIFICATION**

**THIS IS TO CERTIFY** that a copy of the foregoing was either hand delivered and/or mailed, postage prepaid, on November 28, 2005, to the following pro se party:

Marty Calderon
P.O. Box 503
Norwalk, CT  06852

/s/_____
    Michael A. Wolak, III

-12-

J:\CYCOM32\WPDOCS\D015\P003\00014759.DOC