### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

MARTY CALDERON,
     Plaintiff,

     v.

PAUL CAVALIER, et al.,
     Defendants.

CIVIL ACTION NO.
3:02cv1767 (SRU)

### RULING ON MOTIONS FOR A NEW TRIAL

On October 4, 2002, Marty Calderon filed a lawsuit, primarily pursuant to 42 U.S.C. §
1983, against the City of New Haven and Police Officer Paul Cavalier, alleging violations of the
United States Constitution, the Constitution of the State of Connecticut, federal law, and
Connecticut law. Specifically, she alleged false arrest, malicious prosecution, discrimination
based on race, conspiracy to deprive her of equal protection of the law, municipal liability,
defamation, interference with property rights, interference with contracts, and physical injury.
Calderon claimed that Cavalier unlawfully arrested her at her East Haven home on October 7,
2000, at 4:30 a.m.

Trial on Calderon's claims began on October 31, 2005. During the course of trial, I
granted defendants' Rule 50 motion with respect to all claims except the false arrest claim. The
jury considered Calderon's false arrest claim, and on November 1, 2005 returned a verdict in
favor of defendants. Calderon has filed two motions for a new trial, pursuant to Rule 59 of the
Federal Rules of Civil Procedure, claiming that the jury instructions were incorrect, and that the
jury's verdict was incorrect as a matter of law.[1] For the reasons that follow, Calderon's motions

---

[1] Calderon has filed two motions, although they appear to be substantively the same with
respect to the issues raised – the main difference being that the second motion (doc. # 191)
contains more analysis and support. I have reviewed both motions and memoranda.

are denied.

## I.    Factual Background

The evidence at the October 31-November 1, 2005 trial revealed the following facts.  On October 6, 2000, Officer Paul Cavalier, a police officer for the City of New Haven, responded to a civilian complaint made by Christopher Santos in New Haven.  Christopher Santos is Calderon's former husband.  Santos and Calderon were engaged in a disagreement regarding their children.  Santos made a complaint to Cavalier that Calderon had threatened him and trespassed on his property.  Because the matter involved a dispute regarding their children, Cavalier treated the complaint as a Family Violence Matter, which involved particular procedures and protocols that Cavalier followed.  After receiving Santos' complaint and following several procedural requirements, Cavalier, escorted by an East Haven police officer, went to Calderon's home in East Haven.  Cavalier and Calderon's testimony differed with respect to what occurred when Cavalier came to Calderon's door, but in some manner, the two had a verbal exchange that occurred at Calderon's door, in Calderon's home, and outside her home.  Cavalier placed Calderon under arrest for threatening and trespassing around 4:30 a.m. on October 7, 2000.

## II.    Standard of Review

A motion for a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure. Pursuant to Rule 59(a), "a new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ."  The Second Circuit has held that, "a motion for a new trial should be granted when, in the

opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a

miscarriage of justice." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)

(quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988)).  In

considering a motion for a new trial, a trial judge can weigh the evidence himself.  *Id.*  A motion

for a new trial might be based on an argument that the trial was unfair to the moving party or that

there was an error in the jury instructions.  *Charts v. Nationwide Mutual Insurance Co.*,  397 F.

Supp. 2d 357, 374 (D. Conn. 2005) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243,

251 (1940)).  A court should only grant a Rule 59 motion, however, if the jury's verdict was

egregious.  *Charts*, 397 F. Supp. 2d at 374 (citing *DLC Management Corp. v. Town of Hyde

Park*, 163 F.3d 124, 133 (2d Cir. 1998)).

**III.    Discussion**

Calderon argues, in essence, that my jury instructions on the issue of false arrest

incorrectly stated the law, because I did not instruct the jury that, (a) "exigent circumstances must

exist to arrest the Plaintiff in her home without a warrant," and (b) "an alleged misdemeanor

crime not committed in an officer's presence does not justify a warrantless arrest in the Plaintiff's

home."  *See* Plaintiff's Motion for a New Trial at 2.

There were several factual issues the jury had to consider, and on which I instructed the

jury, with respect to whether Cavalier's arrest of Calderon was lawful: (1) whether Cavalier had

probable cause; (2) whether Cavalier arrested Calderon in her home; (3) if so, whether an

exception to the warrant requirement applied to the arrest in Calderon's home; and (4) whether

Cavalier had jurisdiction to arrest Calderon, in light of the fact that he was a New Haven officer

arresting Calderon in East Haven.

-3-

Although the jury had to consider several issues with respect to the legality of Calderon's arrest, there was evidence from which the jury could conclude that the arrest was lawful. Furthermore, I instructed the jury on the relevant law needed to make those factual determinations. As a result, I conclude that the jury's verdict was not a miscarriage of justice.

A.     Exigent Circumstances

With respect to the warrantless arrest in Calderon's home, Calderon first claims that I should have instructed the jury that exigent circumstances must have existed for the warrantless arrest to be reasonable.

A warrantless arrest in a person's home is per se unreasonable unless an exception to the warrant requirement applies. *See Payton v. New York*, 445 U.S. 573 (1980); *Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002). The presence of exigent circumstances is one exception to the warrant requirement, but it is not the only exception. *See generally* WAYNE LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.1(c) (Fourth Edition 2004). "[I]f the entry to the premises was obtained on some other lawful basis, then the *Payton-Steagald* warrant requirement is inapplicable to an arrest thereafter made within – provided it is accomplished without exceeding the permissible scope of that entry." *Id.* In this case, there were no facts to indicate that exigent circumstances existed, so it would have been improper to charge the jury on the exigent circumstances exception. Based on the testimony of Cavalier, there were facts, however, to support a potential jury finding that Calderon consented to Cavalier's entry into her home. Consent is an exception to the warrant requirement, in that when the person to be arrested voluntarily consents to the entry by a known police officer, no warrant is needed. LAFAVE at § 6.1(c). Indeed, the *Payton* rule itself, protects against a "warrantless and

-4-

*nonconsensual* entry into a suspect's home." *United States v. Gori*, 230 F.3d 44, 51 (2d Cir.

2000) (quoting *Payton*, 445 U.S. at 586) (emphasis added).

>  According to the Second Circuit:

> > *Payton* recognized the existence of a *limited* right of privacy against an arrest
> > in the suspect's home. Like any thread of Fourth Amendment jurisprudence,
> > *Payton* protects an individual's privacy interest; thus, what a person
> > knowingly exposes to the public, even in his own house or office, is not a
> > subject of Fourth Amendment protection.

*Gori*, 230 F.3d 44, 51 (quoting *United States v. Santana*, 427 U.S. 38, 42 (1976)). The warrant

requirement in *Payton* is "grounded in the breach of the entrance to the individual's home," not

in the act of arrest itself (since there is no general requirement that a warrant is needed for arrest).

LaFave § 6.1c; *see also Gori*, 230 F.3d at 51 ("The *Payton* rule . . . is directed primarily at

warrantless physical intrusion into the home."). Because it is the unauthorized entry, and not the

arrest that gives rise to the warrant requirement, "the police once inside should be allowed to

make an unannounced arrest," without being in violation of the warrant requirement. LaFave at

§ 6.1(c). In sum, the voluntary, uncoerced consent of a person to be arrested, absent deception on

the part of a known police officer is an exception to the warrant requirement. Thus, Calderon's

contention that "exigent circumstances must exist" to arrest a person in her home without a

warrant is an incorrect statement of the law, because it is also proper to arrest someone in her

home without a warrant if the person arrested consents to the officer's entry into the home.

>  Indeed, I charged the jury, "To arrest someone in her home, the officer must have an

arrest warrant, or alternatively, the officer must have probable cause plus a relevant exception to

the warrant requirement. The only exception to the warrant requirement that potentially applies

here is consent." Jury Instructions (doc. #183) at 9. I then instructed the jury that the parties

agreed that Cavalier did not have an arrest warrant, so in order to find the arrest lawful, the jury

would have to find that Cavalier had probable cause and consent. *Id.* I then instructed the jury

on the legal definitions of probable cause and consent. *Id.* at 7-8, 10.

There is no question that exigent circumstances provide one exception to the warrant

requirement. I read Calderon's proposed jury instructions prior to the November 1, 2005 charge

conference and am mindful of the cases she cites supporting that proposition. Although

Calderon is correct that the presence of exigent circumstances could constitute another exception

to the warrant requirement, in this case, that exception simply did not apply based on the

evidence submitted at trial. Calderon is also correct that a warrantless arrest in a person's home

would violate the *Payton* rule, unless a relevant exception applied. To that end, I instructed the

jury that, with respect to the warrantless aspect of the arrest, in order to find that the arrest was

lawful, the jury would have to find that an exception to the warrant requirement applied – in this

case, the consent exception. *Id.* at 9-11.

Calderon may not agree with the jury's determination that she voluntarily consented to

Cavalier's entrance into her home, but there were facts presented at trial from which a reasonable

jury could draw that conclusion, and as a result, I cannot say that the jury's verdict was a

miscarriage of justice.

B.    Warrantless Arrest for Misdemeanor Not Committed in Officer's Presence

Second, Calderon claims that my instructions were incorrect as a matter of law because I

did not instruct the jury that an officer can only arrest a person for a misdemeanor charge without

a warrant if the person committed the misdemeanor in the officer's presence. Under Connecticut

law, however, a police officer can arrest a person for a misdemeanor, even if the misdemeanor is

not committed in his presence.

Connecticut General Statutes § 54-1f(a) delineates the arrest power of a police officer making an arrest within his own jurisdiction:

> Peace officers . . . in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . .

According to the statute, it is proper to arrest for any crime, that is, a felony or a misdemeanor, if that crime is committed in the officer's presence, or upon the speedy information of others. *See State v. Santiago*, 224 Conn. 494, 498 (1993). The determination whether an officer has "speedy information" sufficient to arrest, pursuant to § 54-1f is "usually summarized as probable cause to arrest." *Beinhorn v. Saraceno*, 23 Conn. App. 487, 492 (1990). I instructed the jury that they must determine whether Cavalier had probable cause to arrest Calderon and defined probable cause at length. *See* Jury Instructions (doc. #183) at 7-9. There was testimony at trial concerning the civilian complaints of Calderon's alleged threatening conduct, and the steps Cavalier took immediately thereafter from which the jury could determine that he had probable cause to arrest. Because the "speedy information" determination is measured according to whether a police officer has probable cause, Cavalier could have arrested Calderon for a misdemeanor not committed in his presence, if he had probable cause to do so.

Because Cavalier arrested Calderon outside of his jurisdiction, I instructed the jury about another determination they needed to make regarding whether the arrest was lawful. Connecticut General Statutes § 54-1f(c) enunciates the arrest power of a police officer making an arrest outside of his jurisdiction:

> Members of any local police department . . . when in immediate pursuit of
> one who may be arrested under the provisions of this section, are authorized
> to pursue the offender outside of their respective precincts into any part of the
> state in order to effect the arrest.  Such person may then be returned in the
> custody of such officer to the precinct in which the offense was committed.

It is proper for an officer to make a warrantless arrest outside of his jurisdiction, therefore, if the

officer is "in immediate pursuit" of a person who could otherwise be arrested pursuant to section

54-1f(a).  Reading the two sections together, an officer can make a warrantless arrest for any

crime in another jurisdiction, as long as the officer has "the speedy information of others," that is,

probable cause, and the officer is in immediate pursuit of the person.

Calderon argues that the common law imposes another limit – that if the crime is a

misdemeanor, it must be committed in the officer's presence in order for the officer to make a

warrantless arrest.  That argument is incorrect, because the common law is not relevant where, as

here, the Connecticut legislature has explicitly enacted legislation pertaining to an officer's arrest

power, thereby abrogating the common law.  *State v. Carroll*, 131 Conn. 224, 227-28 (1944)

(explaining that the Connecticut arrest statute controls, despite a prior common law rule) (citing

*Sims v. Smith*, 115 Conn. 279 (1932)).  In *Carroll*, the Connecticut Supreme Court held that the

Connecticut arrest statute "makes no distinction between misdemeanors and felonies."  *Id.*

Therefore, Calderon's argument that an officer can only make a warrantless misdemeanor arrest

if he observes a person commit a misdemeanor is incorrect as a matter of law.  As discussed

above, pursuant to section 54-1f(a), an officer can make a warrantless misdemeanor arrest on the

"speedy information" of others, which is measured under the probable cause standard.

Calderon also argues that the jury incorrectly concluded that the arrest was lawful,

because Cavalier arrested her outside of his jurisdiction.  I addressed that issue, however, in my

instructions to the jury.  Tracking the statutory requirements, I instructed the jury that "an officer

may not make a warrantless misdemeanor arrest outside of his jurisdiction, unless he is in

immediate pursuit of the suspect and the arrest is otherwise lawful."  Jury Instructions (doc.

#183) at 11.  I continued:

> In this case, the parties agree that Cavalier arrested Calderon for
> misdemeanors without a warrant in East Haven, which is outside of his
> jurisdiction of New Haven.  Therefore, you must find that Cavalier did not
> have jurisdiction to arrest Calderon, unless you find that: (1) the arrest was
> otherwise in accordance with the requirements of the Fourth Amendment as
> described above and (2) Cavalier was in immediate pursuit of Calderon.

*Id.*  I had already instructed the jury about what was required to make the arrest otherwise lawful.

Pursuant to *State v. McCullough*, 88 Conn. App. 110, 123 (2005), I instructed the jury

about the definition of immediate pursuit:

> Immediate pursuit means to follow without delay.  Police officers do not need
> to have lights flashing or sirens on to be in immediate pursuit; indeed, no
> chase is required for immediate pursuit.  It suffices if the pursuit is conducted
> without undue delay at the earliest safe opportunity.  If you find that Cavalier
> was in immediate pursuit of Calderon, then he had jurisdiction to arrest her.
> However, if you find that Cavalier was not in immediate pursuit of Calderon,
> then he did not have jurisdiction to arrest her.  If Cavalier arrested Calderon
> without jurisdiction to do so, the arrest is unreasonable.

Jury Instructions (doc. #183) at 11.

Calderon argues that Cavalier could not have been in immediate pursuit of her as a matter

of law, because he did not witness the alleged crimes.  The case law does not require that an

officer witness the alleged crime, in order to be in immediate pursuit; rather, the officer is

required to follow without "undue delay."  Officer Cavalier testified at trial about the timing of

his actions following the civilian complaint against Calderon, thereby making the issue whether

his actions constituted immediate pursuit a viable issue for the jury to determine.  The jury could

have reasonably concluded that Cavalier pursued Calderon without undue delay.

It should be noted that to the extent Calderon re-argues the issue of the warrantless arrest in her home in the context of her argument regarding the jurisdictional authority of a police officer to make an out of jurisdiction arrest, she is commingling two separate issues.  The validity of the warrantless arrest in Calderon's house is dependent on whether an exception to the warrant requirement applied, as discussed in Part A, above.  The validity of the warrantless arrest outside of Cavalier's jurisdiction is dependent on whether he was in immediate pursuit of Calderon.  I instructed the jury on both issues.

In sum, I instructed the jury that they had to make four findings with respect to whether the arrest was lawful: (1) whether Cavalier had probable cause to arrest for the crimes charged; (2) whether Cavalier arrested Calderon in her home; (3) if he arrested her in her home, whether he had consent to enter the home; and (4) whether Cavalier was in immediate pursuit of Calderon (because of the fact that Cavalier arrested Calderon outside of his jurisdiction).  Jury Instructions (doc. #183) at 11-12.  I gave the jury detailed instructions on each of those issues.  Jury Instructions (doc. #183) at 7-12.

## IV.     Conclusion

I conclude that my instructions to the jury were correct statements of the law.  Although there were several issues for the jury to consider with respect to whether Calderon's arrest was lawful, there was in fact sufficient evidence from which the jury could have determined that it was lawful.  Therefore, the jury's verdict was not a miscarriage of justice. Calderon may disagree with the jury's factual determinations, but those determinations are not incorrect as a matter of law, nor are they egregious.

-10-

Calderon's motions for a new trial (**docs. # 190, 191**) are **DENIED**.


It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2006.

           /s/ Stefan R. Underhill       
               Stefan R. Underhill
               United States District Judge